838 F.2d 663
 Sue Ann COLBURN, Administratrix of the Estate of Melinda Lee
Stierheim, Deceased, Appellant,
v.
UPPER DARBY TOWNSHIP, Upper Darby Township Police
Department, Diane Miller, Individually and as Police
Officer-Matron of Upper Darby Township, Martin Kerns,
Individually and as Police Commissioner of Upper Darby
Township, and James J. Ward, Individually and as Mayor of
Upper Darby Township.
 No. 86-1675.
 United States Court of Appeals,
Third Circuit.
 Argued May 22, 1987.
Decided Jan. 26, 1988.
Opinion on Denial of Rehearing and Rehearing En Banc Feb. 22, 1988.
 
 Joseph R. Pozzuolo, Gary Perkiss (argued), Pozzuolo & Perkiss, Philadelphia, Pa., for appellant.
 William F. Holsten, Holsten & White, Media, Pa., for appellees Upper Darby Tp. and James J. Ward, Individually and as Mayor of Upper Darby Tp.
 Dean F. Murtagh (argued), German, Gallagher & Murtagh, Philadelphia, Pa., for all appellees.
 Before SLOVITER, BECKER and GARTH, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 I.
 Issue
 
 1
 This action was filed under 42 U.S.C. Sec. 1983 alleging that the suicide of decedent by a self-inflicted gun wound while she was detained in police custody apparently for public drunkenness was a result of constitutional violations by the officials responsible for her custody and the municipality which employs them. The district court, without permitting amendment, dismissed the complaint. In determining whether the district court erred as a matter of law, we must look once again to our precedent on the extent of factual specificity required in civil rights complaints and on the nature of conduct which constitutes a constitutional deprivation.
 
 II.
 Facts
 
 2
 Sue Ann Colburn, the administratrix of the estate of Melinda Lee Stierheim, filed this action against Upper Darby Township (Upper Darby); the Upper Darby police department; Diane Miller, both individually and in her official capacity as an Upper Darby police officer; Martin Kerns, both individually and in his official capacity as Upper Darby police commissioner; and James Ward, both individually and in his official capacity as Upper Darby mayor.
 
 
 3
 The facts, as set forth in the original complaint, are as follows. At approximately 5:00 p.m. on April 30, 1985, Stierheim, dressed in blue denim shorts and a halter top and "visibly intoxicated", was taken into custody by the Upper Darby police. Before placing Stierheim in a jail cell, Miller, the police matron on duty at the time, searched Stierheim. Miller did not find any handgun concealed on Stierheim's person. Approximately four hours later, while in her cell, Stierheim shot herself with a handgun. Stierheim died later that night, becoming the third person since 1982 to have committed suicide while in Upper Darby police custody.
 
 
 4
 The complaint alleges that Miller's search and supervision of Stierheim was negligently and/or recklessly performed, that defendants have exhibited a "custom of laxity regarding the supervision and monitoring of their jail cells and in searching individuals taken into police custody," and that defendants' "failure to provide adequate supervision and monitoring of their jail cells and their failure to provide adequate training to police officers-matrons in searching individuals taken into police custody amounts to gross negligence and a deliberate indifference to the safety and lives of individuals taken into custody and detained." App. at 8. It is also alleged that defendants "knew or had reason to know from their observation that [Stierheim] was a suicidal risk." App. at 10. The inadequate search and supervision are alleged to have been the proximate cause of Stierheim's death. Recovery is sought under 42 U.S.C. Sec. 1983 for deprivation of Stierheim's constitutional rights under the Eighth and Fourteenth Amendments.[1]
 
 
 5
 Defendants moved for dismissal of the complaint. They argued, inter alia, that the complaint failed to plead with the requisite factual specificity a constitutional deprivation sufficient to support a due process claim against any of the defendants; that with respect to Kerns and Ward, the complaint failed to allege facts supporting individual liability; that the complaint failed to plead with requisite specificity an official custom or policy sufficient to support municipal liability; and that since Stierheim was not convicted of any crime, she could assert no Eighth Amendment claim.
 
 
 6
 The district court granted the motion to dismiss without opinion. After the court's order dismissing but within the time allowed by stipulation approved by the court, Colburn filed an answer to the motion to dismiss and a supporting memorandum.[2] Colburn also moved for reconsideration. In the court's opinion denying reconsideration, it explained that it dismissed the section 1983 due process claim against Miller individually because negligent actions cannot produce constitutional deprivations actionable under section 1983, and because "[t]he facts as stated lack sufficient specificity to tie together the allegedly inadequate frisk and the subsequent suicide." App. at 110. Similarly, the court dismissed the section 1983 due process claims against all defendants in their official capacities because "[a] conclusory allegation that a municipal police force is lax in carrying out its duties is the exact type of negligent behavior the Supreme Court intended to exclude from the scope of section 1983," and because "[t]he extension of municipal liability to cover unforeseeable and tragic events caused directly by the superseding actions of a third party is beyond the realm of cognizable section 1983 violations." App. at 111. The court also held that the Eighth Amendment was inapplicable since Stierheim was unconvicted.
 
 
 7
 Colburn appeals from the order that denied her motion for reconsideration and thereby granted defendants' motion to dismiss.
 
 III.
 The Pleading Standard
 
 8
 To sustain the dismissal of a complaint under Fed.R.Civ.P. 12(b)(6), " 'we must take all the well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff,' and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Estate of Bailey by Oare v. County of York, 768 F.2d 503, 506 (3d Cir.1985) (quoting Helstoski v. Goldstein, 552 F.2d 564, 565 (3d Cir.1977) (per curiam)). The dual policy concerns of protecting state officials from a deluge of frivolous claims and providing state officials with sufficient notice of the claims asserted to enable preparation of responsive pleadings have led us to impose on section 1983 claims the additional pleading requirement that the "complaint contain a modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs." Ross v. Meagan, 638 F.2d 646, 650 (3d Cir.1981); see also Frazier v. Southeastern Pennsylvania Transportation Authority, 785 F.2d 65, 67 (3d Cir.1986); Rotolo v. Borough of Charleroi, 532 F.2d 920, 922 (3d Cir.1976).
 
 
 9
 The heightened specificity requirement for section 1983 claims does not alter the general standard for ruling on motions to dismiss under Rule 12(b)(6). See Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3d Cir.1986). As we stated in Frazier, "the crucial questions are whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." 785 F.2d at 68; accord District Council 47, American Federation of State, County and Municipal Employees v. Bradley, 795 F.2d 310, 313 (3d Cir.1986). We have routinely held that complaints comply with this standard if they allege the specific conduct violating the plaintiff's rights, the time and the place of that conduct, and the identity of the responsible officials. See id. at 314; Frazier, 785 F.2d at 68-70; Hall v. Pennsylvania State Police, 570 F.2d 86, 89 (3d Cir.1978). A plaintiff is not required to provide either proof of her claims or "a proffer of all available evidence" because in civil rights cases "much of the evidence can be developed only through discovery" of materials held by defendant officials. Frazier, 785 F.2d at 68, quoted with approval in District Council 47, 795 F.2d at 313.
 
 
 10
 Moreover, we have held that "failure to permit amendment of a complaint dismissed for want of specific allegations constitutes an abuse of discretion." Ross, 638 F.2d at 650; see also District Council 47, 795 F.2d at 316. Of course, the district court need not permit an amendment that would be insufficient to cure the deficiency in the original complaint. See Sooner Products Co. v. McBride, 708 F.2d 510, 512 (10th Cir.1983) (per curiam) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)); 3 J. Moore, Moore's Federal Practice Sec. 15.10, at 15-106 & n. 5 (2d ed. 1985).
 
 
 11
 A review of the record provides ample explanation why plaintiff did not file a motion to amend her complaint. Defendants filed their motion to dismiss on May 16, 1986. Stipulations between counsel, approved by the court, extended plaintiff's time to answer or otherwise move with respect to defendants' motion to dismiss until June 27, 1986. Nonetheless, by order signed June 23, 1986 and entered June 24, 1986, the district court granted what it termed the "unopposed" motion to dismiss for the reasons stated therein.
 
 
 12
 On June 27, 1986, within the time of the extension previously approved by the court, plaintiff filed her answer and a forty page memorandum in opposition to the motion to dismiss which referred to additional facts in support of her cause of action. Plaintiff argued, inter alia, that the complaint was pled in sufficient detail, but also requested, if necessary, that the court "permit plaintiff to amend the complaint following completion of discovery." App. at 75. Because the court had already dismissed the complaint, plaintiff also filed on the same day a motion for reconsideration of the district court's order.
 
 
 13
 It might have been preferable for plaintiff to have appended her proposed amended complaint to a motion so that the district court would have had before it the precise allegations that plaintiff was prepared to make. Under the circumstances, and in particular because of the court's premature dismissal order, we do not deem plaintiff's failure to file a formal motion to amend dispositive. We have repeatedly directed the district courts in section 1983 cases to consider proposed amendments, even in the absence of a petition for leave to amend. See, e.g., Rotolo, 532 F.2d at 923. As Judge Garth, writing for the court in District Council 47, 795 F.2d at 316, stated: "The fact that [plaintiff] appealed the dismissal of this complaint rather than seeking leave to amend pursuant to Fed.R.Civ.P. 15(a) before the district court should not prejudice the plaintiffs.... [W]e have never required plaintiffs to request leave to amend following a district court's dismissal of a complaint."
 
 
 14
 Plaintiff's counsel advised us at oral argument that plaintiff is in a position to file an amended complaint that will include allegations referred to in her memorandum filed in the district court. App. at 70-72. Therefore we need not decide whether the complaint as originally filed was properly dismissed; it is more expedient to consider whether the allegations of the complaint together with those that counsel has represented plaintiff would make if given leave to amend would state a claim under section 1983.
 
 
 15
 In reviewing the sufficiency of civil rights complaints, we cannot avoid noting the difficulty plaintiffs and their counsel may have in attempting to accommodate this court's requirement of factual specificity with amended Fed.R.Civ.P. 11. That rule equates the signature of an attorney or party signing a pleading with a certificate that the pleading "is well grounded in fact," and requires plaintiffs to make "some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the law." Fed.R.Civ.P. 11 Advisory Committee's Notes concerning 1983 Amendment. However, the Advisory Committee has explained that, "[t]he standard is one of reasonableness under the circumstances." Id. One of the circumstances to be considered is whether the plaintiff is in a position to know or acquire the relevant factual details. The administratrix in this action is in a particularly difficult position because Stierheim is dead and the results of defendants' investigations into the incident are apparently not a matter of public record. Defendants have not yet responded to plaintiff's interrogatories and her requests for production of documents. We must take these factors in consideration in determining whether, at this preliminary stage, we can hold as a matter of law that plaintiff's allegations cannot reasonably be read to state a claim under section 1983.
 
 IV.
 The Requirements of a Section 1983 Claim
 
 16
 Defendants do not dispute that the complaint sufficiently alleges one of the two prerequisites of a section 1983 action, that the conduct complained of must be committed by a person acting under color of state law. Instead they challenge the complaint's sufficiency in alleging the second requirement, that the conduct complained of deprived the plaintiff of a right or privilege secured by the Constitution or the laws of the United States. See Riley v. Jeffes, 777 F.2d 143, 145 (3d Cir.1985). They argue that the failure to prevent Stierheim's suicide does not rise to the level of a constitutional violation since they have no obligation "to protect a prisoner from self-destructive behavior." Appellees' Brief at 28. We cannot accept the defendants' argument that a prisoner's suicide can never give rise to a section 1983 violation.
 
 
 17
 Cases where the injury to the victim is caused by violence from persons other than the defendant officials acting under color of law present difficult issues. In Commonwealth Bank & Trust Co. v. Russell, 825 F.2d 12 (3d Cir.1987), we considered whether a section 1983 complaint could be sustained against custodial officials for their allegedly reckless actions in maintaining an insecure jail from which a dangerous prisoner escaped and thereafter murdered nearby residents. In upholding the district court's dismissal of the complaint, we distinguished between the relationship of custodial officials and the general public, at issue in Russell, and the relationship of custodial officials and persons in their custody. We held that the escaped prisoner's crime against a member of the general public could not reasonably be attributed to the custodial officials. Id. at 17. On the other hand, we stated that "[a] prisoner is, by virtue of his or her custody, in a special relationship with the custodial authorities and dependent upon them for protection." Id. at 16. We continued, "[i]f the authorities recklessly disregard the prisoner's safety, they may be liable under Sec. 1983 for actions performed by another inmate." Id.
 
 
 18
 In our earlier opinion in Davidson v. O'Lone, 752 F.2d 817 (3d Cir.1984) (in banc), aff'd sub nom. Davidson v. Cannon, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), we considered the claim of a prison inmate who suffered a deprivation of a liberty interest through an attack by another inmate. We reasoned that "[b]ecause an inmate is not free to leave the confines which s/he is forced to share with other prisoners, the state bears the responsibility for the inmate's safety." Davidson, 752 F.2d at 821. We stated that liability may be imposed on prison officials, even for assaults which they did not commit, "if there was intentional conduct, deliberate or reckless indifference to the prisoner's safety, or callous disregard on the part of prison officials." Id. at 828. We reaffirmed that where prison officials infringed a liberty interest by intentional conduct, gross negligence, or reckless indifference, or an established state procedure, the matter is actionable under section 1983. Id.[3]
 
 
 19
 We see no reason not to apply a similar construction of section 1983 when the acts causing the injury are those of the prisoner herself. A detainee is entitled under the Due Process Clause of the Fourteenth Amendment to, at a minimum, no less protection for personal security than that afforded convicted prisoners under the Fourteenth Amendment and no less a level of medical care than that required for convicted prisoners by the Eighth Amendment. See Boring v. Kozakiewicz, 833 F.2d 468, 471-72 (3d Cir. 1987); Norris v. Frame, 585 F.2d 1183, 1187 (3d Cir.1978); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1079-80 (3d Cir.1976); see also City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983) (detainee's due process rights are at least as great as prisoner's Eighth Amendment rights); Bell v. Wolfish, 441 U.S. 520, 539, 99 S.Ct. 1861, 1874, 60 L.Ed.2d 447 (1979) (pretrial detainees have additional due process right to freedom from punishment).
 
 
 20
 In Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Court held that prison officials were entitled to search inmates and their cells to discover contraband in order to prevent prison violence. The violent behavior referred to included not only prisoners' assaults against prison staff, visitors, and other prisoners, but also prisoners' suicides. In that connection, the Court stated:
 
 
 21
 Inmates have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self restraint .... During 1981 and the first half of 1982, ... there were over 125 suicides in [state and federal prisons].
 
 
 22
 Id. at 526, 104 S.Ct. at 3200. Significant for our purposes is the Court's statement that prison administrators "are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." Id. at 526-27, 104 S.Ct. at 3200-01.
 
 
 23
 The viability of a section 1983 complaint arising from the suicide of a pretrial detainee was considered in depth in Partridge v. Two Unknown Police Officers of Houston, 791 F.2d 1182 (5th Cir.1986). In that case a boy who exhibited agitation and aberrant behavior when arrested for burglary and theft and who had previously had a nervous breakdown, a fact communicated to the arresting officer, committed suicide shortly after being placed in solitary confinement. In reversing the dismissal of the complaint, Judge Wisdom, writing for the majority, stated that "the defendants had a duty, at a minimum, not to be deliberately indifferent to [the detainee's] serious medical needs." Id. at 1187. He continued:
 
 
 24
 A serious medical need may exist for psychological or psychiatric treatment, just as it may exist for physical ills. A psychological or psychiatric condition can be as serious as any physical pathology or injury, especially when it results in suicidal tendencies. And just as a failure to act to save a detainee from suffering from gangrene might violate the duty to provide reasonable medical care absent an intervening legitimate government objective, failure to take any steps to save a suicidal detainee from injuring himself may also constitute a due process violation.
 
 
 25
 Id. at 1187 (footnotes omitted).
 
 
 26
 The principal theory of the complaint in Partridge was that the boy's death was "caused by the detention center's custom or policy of allowing jail procedures that are callous to the point of deliberate indifference to detainees, especially detainees in need of protection from injuring themselves or others." Id. at 1185. The court held that "to the extent that the claim rests on the detention center's deliberate and systematic lack of adequate care for detainees, it alleges the kind of arbitrariness and abuse of power that is preserved as a component of the due process clause in Daniels [v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ]." Id. at 1187.
 
 
 27
 Other courts have similarly sustained the viability of complaints alleging that officials have demonstrated deliberate indifference to detainees' suicidal tendencies. See Roberts v. City of Troy, 773 F.2d 720, 724-25 (6th Cir.1985); Madden v. City of Meriden, 602 F.Supp. 1160, 1163-64 (D.Conn.1985); see also Jackson v. Chicago, 645 F.Supp. 926, 927-28 (N.D.Ill.1986); Matje v. Leis, 571 F.Supp. 918, 930 (S.D.Ohio 1983). This court has suggested that such a showing will support section 1983 liability, rejecting a similar claim only because the plaintiffs had failed to prove at trial anything more than negligence on the part of the police officers. See Patzig v. O'Neil, 577 F.2d 841, 847-48 (3d Cir.1978).
 
 
 28
 Defendants rely on two district court cases, Williams v. City of Lancaster, Pennsylvania, 639 F.Supp. 377 (E.D.Pa.1986) and Grant v. City of Philadelphia, No. 83-5424 (E.D.Pa. Dec. 5, 1985) , where plaintiffs' section 1983 actions based on the suicide of pretrial detainees were unsuccessful. Neither of those cases involved a motion to dismiss the complaint. Instead, both cases were decided on summary judgment following discovery. Thus, for example, based on the material before it on summary judgment, the district court in Williams was able to conclude that defendants' action could not be termed more than negligence and that "the officers' failure to seek out medical care cannot be said to be a deliberate or reckless indifference to Williams' health and safety." Williams, 639 F.Supp. at 383. A similar conclusion was reached by the same court in Grant.
 
 
 29
 Since the case before us was decided on a motion to dismiss the complaint rather than on a motion for summary judgment, and there has been no discovery, we need not consider whether this court would have decided those cases the same way. Of course we agree that custodial officials cannot be placed in the position of guaranteeing that inmates will not commit suicide. On the other hand, if such officials know or should know of the particular vulnerability to suicide of an inmate, then the Fourteenth Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability.
 
 
 30
 In Estate of Bailey by Oare v. County of York, 768 F.2d 503, 508 (3d Cir.1985), this court further elucidated this issue when we held:
 
 
 31
 The allegations of the complaint may fairly be read to allege conduct rising to the level of deliberate indifference, reckless disregard, or gross negligence by the agency and by its supervisory officials fairly attributable to policies and practices of the agency. They allege more than the mere "negligent monitoring of the mother's household," as stated by the dissent. They therefore adequately meet the standard of conduct encompassed by Sec. 1983. See, e.g., Voutour v. Vitale, 761 F.2d 812, 820-22, 823 (1st Cir.1985); Avery v. County of Burke, 660 F.2d 111, 114 (4th Cir.1981).
 
 
 32
 We have not yet had occasion to define "gross negligence" or distinguish it from "reckless disregard" or "reckless indifference" in the civil rights context.[4] Even if we were convinced that there could be a meaningful distinction between these terms for purposes of section 1983 actions, it would be premature to attempt to draw such a fine line at this stage of the proceeding. Since the Supreme Court has recognized the obligation of prison officials to take reasonable measures to guarantee the safety of inmates, our inquiry is merely whether the putative amended complaint can fairly be construed as alleging a violation of that duty sufficient to constitute deprivation of Stierheim's due process rights.
 
 V.
 Sufficiency of the Complaint
 A.
 
 33
 The complaint in this case alleges that defendants knew or should have known that Stierheim was a suicide risk. App. at 10. While this allegation standing alone may not have met this court's standard for a modicum of factual specificity in civil rights complaints, plaintiff, in her memorandum in opposition to defendants' motion to dismiss in the district court, buttressed her complaint allegation with the following facts which could be asserted in an amended complaint: (1) that the Upper Darby police were familiar with Stierheim from previous encounters as a result of her relationship with members of the "Warlocks" motorcycle gang; (2) that on the day before her suicide the Upper Darby police had been called to Stierheim's apartment after Stierheim had jumped from the window following an argument with her boyfriend; (3) that Stierheim was extremely depressed for personal reasons; (4) that Stierheim had obvious scars on her right wrist from a previous suicide attempt; (5) that the detaining officer had to prevent Stierheim from swallowing three Valium pills she had removed from her purse; (6) that Stierheim was detained by the police "for her own protection"; and (7) that Miller found a live round of ammunition in Stierheim's pocket. App. at 70-71.[5]
 
 
 34
 We cannot conclude as a matter of law that these allegations are insufficient to state a claim under section 1983 against Miller, the custodial official, in her individual capacity. It does not appear that plaintiff's proposed amended complaint is frivolous, or that such a complaint would give defendants insufficient notice to enable them to file an answer. Plaintiff is therefore entitled to a reasonable amount of discovery to help her make the necessary showing to prove her case. For example, presumably defendants found the gun that killed Stierheim. Discovery could show whether it is conceivable that the gun could have been concealed in a body cavity (which was suggested by defendants at oral argument).
 
 
 35
 It follows that the district court erred in dismissing the complaint against Miller in her individual capacity without permitting an amendment that sufficiently states a claim under section 1983. The complaint as proposed to be amended is sufficient to withstand a motion to dismiss by Miller.[6]
 
 B.
 
 36
 Defendant Upper Darby Township[7] cannot be held liable in a section 1983 action for its employees' actions solely on the basis of respondeat superior. Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 691-95, 98 S.Ct. 2018, 2036-38, 56 L.Ed.2d 611 (1978). It can be liable only if the action alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. at 690-91, 98 S.Ct. at 2035-36.
 
 
 37
 Even in the absence of formal policymaking activity, "an 'official policy' may be inferred 'from informal acts or omissions of supervisory municipal officials,' " Estate of Bailey by Oare v. County of York, 768 F.2d at 506 (quoting Turpin v. Mailet, 619 F.2d 196, 200 (2d Cir.), cert. denied, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980)), although not from the misconduct of a single low-level officer. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 821-24 (plurality opinion), 830-31, 105 S.Ct. 2427, 2435-37 (plurality opinion), 2439-40, 85 L.Ed.2d 791 (Brennan, J., concurring); see also Bartholomew v. Fischl, 782 F.2d 1148, 1154 (3d Cir.1986) ("it is possible that a 'single instance' of misconduct by a policymaking city official could provide the basis for an inference that an official policy existed." (emphasis added)). Moreover, as we stated in Davidson, 752 F.2d at 828, "when officials with a responsibility to prevent harm, such as prison officials, fail to establish or execute appropriate procedures for preventing serious malfunctions in the administration of justice, such failure would support a claim under Sec. 1983. See, e.g., Murray v. City of Chicago, 634 F.2d 365 (7th Cir.1980), cert. dismissed sub. nom. Finley v. Murray, 456 U.S. 604, 102 S.Ct. 2226, 72 L.Ed.2d 366 (1982)."
 
 
 38
 Colburn's complaint alleges that Miller, Upper Darby, Ward (the Mayor), the Upper Darby police, and Kerns (the Police Commissioner), "have exhibited a custom of laxity regarding the supervision and monitoring of their jail cells and in searching individuals taken into police custody." App. at 8. The defendants argue that a "custom of laxity" cannot be the type of custom sufficient to support municipal liability under section 1983. Appellees' Brief at 8. To the contrary, we have made clear our position that "an 'official policy' may be inferred 'from informal acts or omissions of supervisory municipal officials.' " Estate of Bailey by Oare v. County of York, 768 F.2d at 506 (citation omitted) (emphasis added); see also Wellington v. Daniels, 717 F.2d 932, 935 (4th Cir.1983).
 
 
 39
 In Black v. Stephens, 662 F.2d 181, 189-91 (3d Cir.1981), cert. denied, 455 U.S. 1008, 102 S.Ct. 1646, 72 L.Ed.2d 475 (1982), it was the failure of the police chief to take certain actions, i.e. delaying disciplinary investigations into conduct of an officer charged with excessive force and failure to file citizens' complaints about excessive force in the officers' permanent personnel file, that provided the basis for the inference of the police chief's "policy of encouraging the use of excessive force." That evidence led us to uphold a jury's finding of liability against the police chief and the City of Allentown, on the basis of a "governmental policy." In Partridge v. Two Unknown Police Officers, 791 F.2d at 1188-89, the Fifth Circuit held that the allegation that the Houston police department "had a custom of inadequate monitoring of suicidal detainees which amounted to a policy of denying them medical care" satisfied the requirements of Monell.
 
 
 40
 In this case plaintiff has done more than merely allege a "custom of laxity" which can be inferred from the "[d]efendants' failure to provide adequate supervision and monitoring of their jail cells". That allegation alone might not satisfy our requirement for a "modicum of factual specificity" in civil rights cases. However, plaintiff has alleged that Stierheim was the third person to commit suicide while in police custody at the Upper Darby Township police department jail since November 1982. App. at 8. The two prior suicides can be viewed as providing the governing body of Upper Darby with actual or constructive knowledge of the alleged custom of inadequate monitoring of jail cells. See Partridge, 791 F.2d at 1189. In short, we cannot hold that the complaint provides no basis for finding liability against Upper Darby or its governing officials in their official capacity. Although it may be difficult for plaintiff to prove the " 'nexus between the policy ... and the infringement of constitutional rights' ", see Talbert v. Kelly, 799 F.2d 62, 67 (3d Cir.1986) (quoting Estate of Bailey by Oare v. County of York, 768 F.2d at 507), we cannot say at this stage of the proceeding that such a nexus is so implausible that the complaint cannot be maintained. Therefore, the district court erred in dismissing the complaint as to Upper Darby and Miller, Kerns and Ward in their official capacities.
 
 C.
 
 41
 On the other hand, we do not believe that the action can be maintained against defendants on the basis of the broad allegation that they failed to adequately train officers in searching and supervision of detainees. See App. at 9. In Chinchello v. Fenton, 805 F.2d 126, 134 (3d Cir.1986), we held that allegations regarding a supervisory official's "failure to train, supervise, and discipline" prison officials would not support a claim that the supervisory official's conduct "violate[d] a clearly established constitutional duty." See also Krisko v. Oswald, 655 F.Supp. 147, 152 (E.D.Pa.1987) (failure to train police insufficient to support municipal liability for constitutional violation).
 
 
 42
 We do not suggest that there are no circumstances in which a deficient training policy can form the basis for municipal liability under section 1983. See, e.g., Voutour v. Vitale, 761 F.2d 812, 819-22 (1st Cir.1985), cert. denied, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986); Rymer v. Davis, 754 F.2d 198, 200-01 (6th Cir.), vacated and remanded in light of City of Oklahoma City v. Tuttle sub nom. City of Shepardsville, Kentucky v. Rymer, 473 U.S. 901, 105 S.Ct. 3518, 87 L.Ed.2d 646 reaff'd after remand, 775 F.2d 756 (6th Cir.1985). Moreover, even the four Justices of the Supreme Court who voted not to dismiss the writ of certiorari in a case where liability of a city had been sustained on the basis of a grossly negligent policy of inadequate training agreed that section 1983 liability against a municipality can be premised on failures to train amounting to "reckless disregard for or deliberate indifference to" individuals' rights. City of Springfield, Massachusetts v. Kibbe, --- U.S. ----, 107 S.Ct. 1114, 1121, 94 L.Ed.2d 293 (1987) (O'Connor, J., joined by Rehnquist, C.J., White, J., and Powell, J., dissenting from dismissal of writ of certiorari to Kibbe v. City of Springfield, 777 F.2d 801 (1st Cir.1985)).
 
 
 43
 However, in Chinchello we suggested that at a minimum such liability could be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." Id. at 133 (footnote omitted).
 
 
 44
 In this case, we distinguish between the allegations that in essence claim that defendants had a custom of inadequately monitoring the jails for potential suicides, which we have sustained at least at this stage of the proceeding, and allegations that they failed to train police officers-matrons, like Miller, in proper search techniques. There is nothing alleged other than the isolated instance of Miller's failure to detect Stierheim's handgun in frisking the scantily clothed Stierheim to support maintaining this action on the basis of inadequate training.[8] Therefore, on remand the district court should strike these allegations unless plaintiff can amend the complaint to satisfy the two-pronged test enunciated in Chinchello.
 
 D.
 
 45
 Finally, the complaint contains no allegations that either Kerns or Ward was personally involved in any activity related to Stierheim's death. For this reason, Colburn's claims against Kerns and Ward in their individual capacities were properly dismissed.
 
 VI.
 The Dissenting Opinion
 
 46
 It is unproductive to respond to each of the dissent's mischaracterizations of the majority's opinion and legal precedent.[9] We comment only on the three principal points made by Judge Garth: his stringent fact pleading standard; his exclusion of suicide as a basis for a due process violation; and his insistence that intent is a prerequisite for a due process violation.
 
 
 47
 First, the dissent's extreme view of this court's fact pleading standard may be read as suggesting that it can be used as a vehicle by which we can rid ourselves of litigation alleging civil rights violations. However, our "modicum of factual specificity" standard for evaluating section 1983 complaints was not designed to subvert the Congressional purpose behind section 1983. That statute "was intended not only to provide compensation to the victims of past abuses, but to serve as a deterrent against future constitutional deprivations, as well." Owen v. City of Independence, 445 U.S. 622, 651, 100 S.Ct. 1398, 1416, 63 L.Ed.2d 673 (1980). No precedent authorizes a federal court to dismiss this potentially meritorious claim of a constitutional violation when the relevant facts were known only to Stierheim, who is dead, and defendants, who have declined to provide the available information. As we noted in Part III supra, the claim is not a frivolous one, and defendants, who have vastly superior access than the plaintiff to the relevant facts, should be well able to file an answer to the complaint, when amended. The dissent posits that because Stierheim was dressed in a halter top and denim shorts, the gun was concealed in a body cavity discoverable only by a "constitutionally suspect" intrusive search. Dissenting at 683 n. 14. The undeveloped record discloses no factual basis for the dissent's hypothesis. All the majority holds is that plaintiff is entitled to proceed beyond a Rule 12(b)(6) dismissal to discovery.[10]
 
 
 48
 Second, the dissent believes that there is no room in the broad protection provided by the Fourteenth Amendment for claims based on suicide unless the police assisted or encouraged the act. Dissent at 682. Thus, in Judge Garth's view, prison officials may sit idly by watching as a vulnerable inmate takes her own life as long as they neither supply the gun nor egg her on. In Judge Garth's narrow view of the Fourteenth Amendment no disregard, no matter how callous, can amount to a Fourteenth Amendment violation. He would allow only a state tort negligence action. Dissent at 681 n. 11. Fortunately, neither this court nor the Supreme Court has accepted that position. Instead, the applicable precedent recognizes that custodial authorities have an obligation to protect those placed within their custody and, under certain circumstances, that obligation includes protection from self-inflicted wounds.
 
 
 49
 Finally, Judge Garth, apparently eager to rush in where the Supreme Court has, as yet, declined to tread, would have us "fill in the undefined area that remains" in determining what constitutes a violation of the Fourteenth Amendment due process guarantee. Dissent op. at 677. We prefer to adhere to the established principle that courts should not dash headlong into constitutional pronouncements.
 
 
 50
 In his dissent, Judge Garth, who continuously merges the Eighth and the Fourteenth Amendment standards, argues that the Supreme Court opinions in Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and Davidson v. Cannon, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), adopted the position that conduct "tantamount to intent" is one of the requisite elements of a viable cause of action alleging a violation of the Due Process Clause. Dissent op. at 676 n. 2.[11] The dissent's wish may be father to the thought. There is no clearer evidence that there was no such holding than the Court's own statement that it "recently reserved the general question 'whether something less than intentional conduct, such as recklessness or "gross negligence" is enough to trigger the protections of the Due Process Clause.' " Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986) (quoting Daniels v. Williams, 106 S.Ct. at 667 n. 3) (emphasis added). In Daniels, the Court recognized that conduct covered by section 1983 would undoubtedly fall between the poles of negligence and intentional conduct when it stated that, "[t]he difference between one end of the spectrum negligence--and the other--intent--is abundantly clear." Daniels v. Williams, 106 S.Ct. at 667.
 
 
 51
 The dissent argues that litigants and district court judges need to be provided with a reliable standard for section 1983 claims. Dissent op. at 684 n. 17. Notably, the Supreme Court, when faced with an analogous argument, responded by "declin[ing] to trivialize the due process clause in an effort to simplify constitutional litigation." Daniels, 474 U.S. at 335, 106 S.Ct. at 667. Judge Garth's emotional call for an in banc hearing overlooks that just three years ago this court, in banc, reviewed the applicable principles and gave some guidance (which Judge Garth now criticizes as dictum). However, we decided to "eschew prescribing a comprehensive litmus test to determine which actions are or are not within Sec. 1983, particularly since such a test has so far eluded the Supreme Court." Davidson v. O'Lone, 752 F.2d at 827. Although we may be required to limn the boundaries more specifically when the issue is before us, this is a particularly inappropriate case in which to enunciate the dictum proffered by the dissent. After discovery, the facts might show neither gross negligence nor reckless disregard of Stierheim's constitutional rights or both. On the other hand, discovery might disclose even such "obduracy and wantonness", see Whitley, 475 U.S. at 319, 106 S.Ct. at 1084, as would fit within Judge Garth's restrictive view of due process. Unless this matter proceeds beyond a dismissal, the facts will not be brought to light.
 
 VII.
 Conclusion
 
 52
 For the reasons set forth above, we will affirm that part of the district court's order dismissing the complaint as to Kerns and Ward in their individual capacities, we will reverse the district court's order dismissing the complaint against the other defendants and we will remand for further proceedings in accordance with this opinion.
 
 GARTH, Circuit Judge, dissenting:
 
 53
 My disagreement with the majority is a fundamental one. We disagree on the level of intent required for a viable, due process based, Sec. 1983 claim. The majority today, in disregard of Supreme Court instruction, has conclusorily asserted that allegations of gross negligence or deliberate indifference are sufficient to sustain a due process Sec. 1983 claim. By using these terms interchangeably, and by not giving content to their meaning, the majority has failed to announce a meaningful standard that can be applied by the bar, the district court and indeed this court.
 
 
 54
 The standard that I understand is the appropriate due process, Sec. 1983 standard, requires affirmative pleading either of intentional action or of an abuse of power by state officials, or of actions or inactions which may be deemed tantamount to an intentional act. Moreover, so that there is clear meaning, uniformity and certainty in the definition of the standard itself, as well as in its application to particular facts, I would define "intentional" in terms of the Restatement (Second) of Torts, Sec. 8A.
 
 
 55
 The word "intent is used ... to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.
 
 
 56
 Comment: * * *
 
 
 57
 b.... Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.[1]
 
 
 58
 Id. See also Boudeloche v. Grow Chemical Coatings Corp., 728 F.2d 759, 761 (5th Cir.1984).
 
 
 59
 Also of concern to me is the majority opinion's departure from our precedents which require that civil rights complaints must be specifically pleaded, and the majority's apparent approval of a civil rights cause of action which charges a municipality with having violated a detainee's constitutional rights where the detainee has taken her own life.
 
 
 60
 I dissent.
 
 I.
 
 61
 In the context of this case, where Colburn as Administratrix alleges a violation of Stierheim's constitutional rights (in particular her due process liberty interest), a Sec. 1983 cause of action requires, as I have indicated above, an affirmative pleading of intentional actions by state officials or an abuse of power by state officials or actions or inactions by state officials which are tantamount to an intentional act. Unless one of these three elements is properly pleaded with specific facts supporting the allegation, the complaint cannot survive a motion to dismiss. Daniels v. Williams, 474 U.S. 327, 331-32, 106 S.Ct. 662, 665-66, 88 L.Ed.2d 662, Davidson v. Cannon, 474 U.S. 344, 347-48, 106 S.Ct. 668, 670-71, 88 L.Ed.2d 677.[2] In Daniels, the complainant was a prison inmate who had tripped on the stairs because a pillow had been left there by a deputy sheriff. Daniels brought suit under Sec. 1983 alleging that he had been "... deprived ... of his 'liberty' interest in freedom from bodily injury." Daniels, 474 U.S. at 328, 106 S.Ct. at 664. The Supreme Court affirmed the grant of summary judgment in favor of the deputy sheriff, holding that the Due Process Clause is not implicated by a state official's negligent act which caused unintended injury to life, liberty or property. The Court noted that the guarantee of due process provided by the Fourteenth Amendment has historically "been applied to deliberate decisions of government officials to deprive a person of life, liberty or property." Id. 106 S.Ct. at 665 (emphasis in original). In addition, Daniels held that a sufficient due process Sec. 1983 claim must also allege arbitrariness and abuse of power by state officials. Id. See also Partridge v. Two Unknown Police Officers of Houston, 791 F.2d 1182, 1183 (5th Cir.1986).
 
 
 62
 Similarly, in Davidson,[3] the Supreme Court held that the Due Process Clause was designed to protect against "abusive government conduct" in which government power is employed as "an instrument of oppression." The Court explained that:
 
 
 63
 the Due Process clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property.
 
 
 64
 * * *
 
 
 65
 * * *
 
 
 66
 [t]he guarantee of Due Process has never been understood to mean that the State must guarantee due care on the part of its officials.
 
 
 67
 Id. at 670.
 
 
 68
 Furthermore, the majority understandably equates the protections afforded prisoners under the Eighth Amendment with the protections afforded detainees under the Due Process Clause of the Fourteenth Amendment. Maj. Op. at 668. See also Williams v. Mussomelli, 722 F.2d 1130, 1132-34 (3d Cir.1983); Rhodes v. Robinson, 612 F.2d 766, 773 (3d Cir.1979). Yet the majority ignores the fact that in Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court held that in order to state a cognizable Eighth Amendment, Sec. 1983 claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106 97 S.Ct. at 292 (emphasis added).
 
 
 69
 In Whitley v. Albers, 475 U.S. 312, 319-20, 106 S.Ct. 1078, 1084-85, 89 L.Ed.2d 251 (1986), the Supreme Court reaffirmed the Estelle standard, and held that it applied in contexts other than a prisoner's medical needs. Whitley involved a prison guard's shooting of a prisoner during a prison riot. The Supreme Court, in upholding a directed verdict for the prison authorities, stated that:
 
 
 70
 it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited under the Cruel and Unusual Punishments Clause, whether the conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.
 
 
 71
 Id. at 319, 106 S.Ct. at 1084.
 
 
 72
 In order to establish a viable claim, the Court held that a plaintiff must show acts which "evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Id. at 321, 106 S.Ct. at 1085. (emphasis added). See also Campbell v. Greer, 831 F.2d 700, 702 (7th Cir.1987) (Liability under the Eighth Amendment "requires at a minimum, that prison officials have realized there was imminent danger and have refused--consciously refused, knowingly refused--to do anything about it.");[4] Duckworth v. Franzen, 780 F.2d 645, 654 (7th Cir.1985) (Liability requires "an act so dangerous that the defendant's knowledge of the risk can be inferred."), cert. denied, --- U.S. ----, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986).
 
 
 73
 I recognize that Daniels reserved the general question "whether something less than intentional conduct, such as recklessness or 'gross negligence' is enough to trigger the protections of the Due Process Clause." Daniels v. Williams, 474 U.S. 327, 334 n. 3, 106 S.Ct. 662, 667 n. 3, 88 L.Ed.2d 663. Indeed, it is precisely because the Supreme Court has given no definitive guidance in this area but has sketched only a general outline, that I believe this court as an institution, has the responsibility to fill in the undefined area that remains. The standard which I believe is the correct standard, is the one set forth at the outset of this dissent, which conforms with the Supreme Court's instruction in Daniels, Davidson and Whitley. Thus, a viable due process Sec. 1983 claim must allege intentional acts by state officials, their abuse of power, or their actions or inactions which are tantamount to intentional acts, which deprive a person of his life, liberty or property.
 
 
 74
 In short, under this standard, given a spectrum with a negligent act at one end and an intentional act at the other, no claim would lie under the Due Process Clause and Sec. 1983, if the challenged conduct fell in that part of the spectrum where the act was not sufficiently intentional to be construed as an abuse of power or where an action or inaction was not tantamount to an intentional act. The majority opinion largely ignores Daniels, Davidson and Whitley, thereby erring in "effectively collaps[ing] the distinction between mere negligence and wanton conduct." Whitley, 475 U.S. at 322, 106 S.Ct. at 1086.
 
 
 75
 Even in Partridge v. Two Unknown Police Officers of Houston, 791 F.2d 1182 (5th Cir.1986), the case upon which the majority relies so heavily, the Fifth Circuit required that the Partridge plaintiffs show "a deliberately adopted policy that constituted indifference" and a "deliberate pattern of conduct" amounting to "the kind of arbitrariness and abuse of power that is preserved as a component of the due process clause...." Id. at 1183.[5]
 
 
 76
 Colburn has not even alleged facts which would have been deemed sufficient by the Partridge court, nor does she contend that she will be able to do so after discovery. (If indeed discovery was even implicated in a 12(b)(6) proceeding. See Part III, infra.) Indeed, neither the complaint upon which the district court ruled, nor Colburn's memorandum "amending" that complaint, to which the majority addresses itself, meet the due process Sec. 1983 standard to which I have adverted. At best, Colburn's complaint and purported amendments set forth a cause of action for negligence.
 
 
 77
 Nor does Colburn demonstrate how each defendant was personally involved in the intentional deprivation of Stierheim's constitutional rights.[6] See Bracey v. Grenoble, 494 F.2d 566 (3d Cir.1974). Colburn's complaint alleges no more than a failure to adequately search, supervise, and monitor. Following are its relevant paragraphs:
 
 
 78
 14. At approximately 5:00 p.m. on April 30, 1985, Melinda Lee Stierheim was taken into custody by Defendant, Upper Darby Township Police Department, visibly intoxicated.
 
 
 79
 16. Prior to placing Melinda Lee Stierheim in a jail cell, Defendant, Diane Miller, searched Melinda Lee Stierheim for, among other things, contraband and hidden objects which Melinda Lee Stierheim could use to injure herself.
 
 
 80
 17. Defendant, Diane Miller, negligently, carelessly and recklessly failed to adequately search Melinda Lee Stierheim, permitting her to retain possession of the handgun while detained in a jail cell of Defendant, Upper Darby Township Police Department.
 
 
 81
 18. As a direct and proximate result of Defendant, Diane Miller's, failure to adequately search Melinda Lee Stierheim, Melinda Lee Stierheim shot herself with the handgun at approximately 9:00 p.m. on April 30, 1985 and died at approximately 2:33 a.m. on May 1, 1985.
 
 
 82
 * * *
 
 
 83
 * * *
 
 
 84
 20. Defendants, Diane Miller, Martin Kerns, James J. Ward, Upper Darby Township and Upper Darby Township Police Department, have exhibited a custom of laxity regarding the supervision and monitoring of their jail cells and in searching individuals taken into police custody.
 
 
 85
 * * *
 
 
 86
 * * *[Civil Rights Cause of Action]
 
 
 87
 34. Defendants' custom of laxity in supervising and monitoring their jail cells and, also, in searching individuals taken into police custody exhibited gross negligence in their duties and a deliberate indifference to the medical needs of Melinda Lee Stierheim when she was taken into police custody.
 
 
 88
 35. Defendants' gross negligence and deliberate indifference to Melinda Lee Stierheim's medical needs, all of which was committed under color of state law while said individual Defendants were acting under the authority issued to them by Defendants, Upper Darby Township and Upper Darby Township Police Department, was a direct and proximate result of Melinda Lee Stierheim's death and a violation of her rights under the laws and Constitution of the United States, in particular the Eighth and Fourteenth Amendments thereof and 42 U.S.C. Section 1983, et seq.
 
 
 89
 App. at 7-8, 12.
 
 II.
 
 90
 Not only does Colburn's complaint fail to allege intent, or abuse of power, or deliberate action or inaction tantamount to intent, (at least one of which is required to sustain an action charging a due process violation) but her complaint fails to allege any facts which could support such allegations. Even if general allegations of gross negligence[7] or recklessness were sufficient to state a due process action under Sec. 1983, which I suggest they are not unless they are defined as being equivalent to intent, abuse of power or deliberate action or inaction tantamount to intent, Colburn's complaint is barren of any facts which could give content to those terms. Thus, her complaint, even as amended cannot be sustained.
 
 
 91
 I can best illustrate this concept by a hypothetical pleading. If a complaint had merely stated the conclusory allegation that a police guard had intentionally caused Stierheim's death, that allegation by itself and without some factual support giving content to the alleged intentional act, would be insufficient under the civil rights pleading standards set forth in District Council 47, American Federation of State, County and Municipal Employees v. Bradley, 795 F.2d 310 (3d Cir.1986); Frazier v. Southeastern Pennsylvania Transportation Authority, 785 F.2d 65, 67 (3d Cir.1986); Rotolo v. Borough of Charleroi, 532 F.2d 920, 922 (3d Cir.1976). Among other things, such an allegation provides no notice to a defendant so that an appropriate answer might be framed. See Frazier, 785 F.2d at 68. A fortiori allegations in a civil rights complaint in terms of "gross negligence," "recklessness" or "deliberate indifference," without more, are equally defective. See Colburn's Complaint p 34 & 35, App. at 12.
 
 
 92
 On the other hand, if a hypothetical complaint alleged that the police guard had intentionally caused Stierheim's death by furnishing Stierheim with the weapon, encouraging or taunting Stierheim to shoot herself, or by encouraging or assisting in any other way, such an act to take place, then the pleading would not only meet the substantive requirements for a Sec. 1983 due process action, it also would have met the pleading requirements of District Council 47, Frazier, and Rotolo.[8]
 
 
 93
 Here of course the complaint, as well as the proposed amendatory allegations, fall far short of meeting the standards of either. A Sec. 1983 due process action must be predicated on acts of the defendant which are either intentional or which are tantamount to intentional acts. Were it otherwise, all torts resulting from mere negligence would be swept within the parameters of a Sec. 1983 due process claim and Sec. 1983 would become a fount of all tort litigation. Indeed, the mere inclusion of the word "reckless" or the term "gross negligence" cannot without more, convert a cause of action in negligence (not sustainable under Sec. 1983) into a constitutional cause of action. If such were to be the case, artful pleaders, through such a device and without alleging specifically the intentional or "tantamount to intentional acts" which are challenged, could open constitutional doors to every tort cause of action. Thus, to plead such a Sec. 1983 cause of action properly, some facts evidencing intent or acts tantamount to intent must be pleaded--here they were not.
 
 
 94
 The "facts" not pleaded but sought to be proved appear on pages 70-72 of the appendix. However, assuming the truth of these allegations and all inferences in favor of Colburn, they would establish no more than that Stierheim was known to the Upper Darby Police Department, that she was depressed, that after a fight with her boyfriend she had jumped out of the window of her apartment on to an adjoining roof, that she had scars on her wrist, that unspecified police had prevented her from taking three valium pills while in custody, that she had been "patted down" by a police matron, that this pat-down revealed one bullet, and that her cell was "merely" monitored by video camera once every half hour.
 
 
 95
 Accordingly, if we were to apply the "tantamount to intent" standard to the allegations of Colburn's initial complaint or to Colburn's proposed amended complaint, it is quite plain that neither can survive a 12(b)(6) motion. No matter how liberally Colburn's complaint is construed, nothing approaching conduct "tantamount to intent," has been or can be attributed to the defendants or any one of them.
 
 
 96
 It adds nothing to the analysis for the majority to state "... the [Colburn] claim is not a frivolous one ..." or that "[n]o precedent authorizes a federal court to dismiss this potentially meritorious claim of a constitutional violation when the relevant facts were known only to Stierheim, who is dead, and defendants, who have declined to provide the information." Maj. op. at 673. The sole question for decision is whether Colburn's complaint can survive a 12(b)(6) motion to dismiss.[9]
 
 
 97
 To hold that a claim is not frivolous, is to hold that all of the elements required for such a claim can be found in the allegations of the complaint. Yet neither Colburn, nor the majority opinion, has identified those elements. I have attempted to do so by arguing that actions "tantamount to intent" must be pleaded. Because they were not pleaded by Colburn, I have found the complaint deficient.
 
 
 98
 Unfortunately, however, the majority, without identifying those elements which would lead to a holding of a non-frivolous Sec. 1983 claim, has "put the rabbit in the hat" and has badly held that Colburn's claim is not frivolous and that it has potential merit as a constitutional claim. Indeed, if the majority opinion had defined the requirements for a "grossly negligent" standard so that a complaint could be properly tested in light of those requirements, I would be less inclined to criticize the majority's ipse dixit statement that Colburn's claim "is not frivolous" and that it presents a "potentially meritorious claim of constitutional violation."
 
 
 99
 Thus, in reviewing the facts alleged in Colburn's complaint and brief, I cannot see how those facts, even if pleaded properly, could meet the standard of "conduct tantamount to intent." Indeed, the most that can be said is that Colburn's allegations establish mere negligence--if that!
 
 III.
 
 100
 I am also troubled by the majority's willingness to overlook the fact that this appeal comes to us after the district court had granted a Fed.R.Civ.P. 12(b)(6) motion to dismiss. Implicit in the majority opinion is the suggestion that before the district court could rule on the defendant's 12(b)(6) motion, the plaintiff should have been permitted discovery.[10]
 
 
 101
 Federal Rule of Civil Procedure 12(b)(6) does not have a provision similar to the summary judgment Rule, Fed.R.Civ.P. 56(f), permitting limited discovery to oppose a motion. However, factual development is irrelevant to the disposition of a motion under 12(b)(6). It is the legal sufficiency of the complaint which is at issue.
 
 
 102
 I cannot subscribe to converting every 12(b)(6) motion into a summary judgment motion. If the plaintiff does not have sufficient facts to satisfy the specificity required by our civil rights cases, see e.g. Rotolo v. Borough of Charleroi, 532 F.2d 920, 922 (3d Cir.1976), then it may be that the plaintiff cannot sustain a constitutional cause of action. If that is the case, then our civil rights pleading requirements have served their purpose of differentiating between constitutional torts requiring some level of intent and those which are insufficiently intentional, though they are committed by state actors, to state a constitutional violation.[11]
 
 
 103
 This, of course, does not mean that the plaintiff has been denied her day in court. Certainly on allegations such as Colburn proposes, an action for negligence would survive in an appropriate state or federal forum, but obviously not as a constitutional action. Discovery could thereupon proceed apace and if that discovery revealed constitutional abuses, nothing would then prevent the plaintiff's assertion of such a cause of action. Hence, the apparent conflict foreseen by the majority in terms of our pleading requirements and Rule 11 is chimerical. See Maj. op. at 667.
 
 IV.
 
 104
 Apart from all other considerations, I cannot agree with the majority's holding that a suicide without police assistance, involvement, or encouragement, may give rise to a constitutional violation by the police and municipal authorities. Where there have been no intentional acts on the part of the police, no abuse of power on their part and no encouragement given to the suicide by the police, no basis exists for a Sec. 1983 due process claim when an individual takes her own life.[12] Yet, Judge Sloviter, arguing that discovery under an amended complaint would cure any pleading deficiency, concludes that Colburn, if she can prove the allegations hypothesized in the appendix at 70-72, can sustain a valid constitutional claim against all of the defendants. See Maj. op. at p. 670. Judge Becker, on the other hand, would hold that even if the Colburn allegations, which appear in her brief on appeal and which are summarized on page 670 of the majority opinion, are proved, they would still be insufficient for a due process based Sec. 1983 complaint unless gross negligence is construed as something less than "deliberate indifference" or "reckless disregard." See Maj. op. at 671 n. 6.[13] The allegations to which the majority refers are summarized at page 670 of the majority opinion:
 
 
 105
 (1) that the Upper Darby police were familiar with Stierheim from previous encounters as a result of her relationship with members of the "Warlocks" motorcycle gang; (2) that on the day before her suicide the Upper Darby police had been called to Stierheim's apartment after Stierheim had jumped from the window following an argument with her boyfriend; (3) that Stierheim was extremely depressed for personal reasons; (4) that Stierheim had obvious scars on her right wrist from a previous suicide attempt; (5) that the detaining officer had to prevent Stierheim from swallowing three Valium pills she had removed from her purse; (6) that Stierheim was detained by the police "for her own protection"; and (7) that Miller found a live round of ammunition in Stierheim's pocket.
 
 
 106
 I have earlier referred to these allegations in arguing that even proof of such facts, could not meet the intent and abuse of power requirements of a Sec. 1983 due process action. For instance, who were the Upper Darby police officers who were familiar with Stierheim's relationship with the "Warlocks" motorcycle gang? Is proof of that knowledge equivalent to an intent to encourage Stierheim's suicide? Is proof of that knowledge to be imputed to every police officer in the police department and in the prison, including Matron Miller? Is proof of the knowledge had by "Upper Darby Police" of Stierheim's jump from a window, or, that Stierheim had scars on her wrist, to be imputed to Matron Miller? And how can a responsible pleader charge that Miller or any of the police officers or officials knew that Stierheim was "extremely depressed for personal reasons?"
 
 
 107
 Does the fact that Stierheim had three valium pills taken from her purse lead to the inexorable conclusion that the police officer who removed them, intentionally encouraged or assisted in her suicide, or, that the knowledge of the existence of three pills must be imputed to others in the police department or in the municipality?[14]
 
 
 108
 Similarly Stierheim's detention "for her own protection," and the disclosure of a round of ammunition in her pocket when she was "patted down" cannot be imputed to persons who were not present when the particular events transpired, nor can they lead to inferences of intentional acts on the part of any defendant to make Stierheim commit suicide. What were the acts of "gross negligence" that Colburn claims are attributable to each defendant? Complaint at p 35, App. at 12. What were Stierheim's medical needs to which somebody was "deliberately indifferent?" Complaint at p 35, App. at 12.[15]
 
 
 109
 Thus, in the first instance, I cannot understand how the allegations on which the majority relies as forming the nucleus of a new and different complaint, could, even if established, state a Sec. 1983 due process claim against the police and municipal authorities. Not only do these allegations fail to specify the allegedly responsible individuals, fail to establish a legal connection between any actor and knowledge held by others, fail to identify the affirmative "moving force" which might implicate the liability of the police department and the municipality[16]--but even more egregiously, these allegations disclose not one scintilla of intent or actions tantamount to intent or abuse of power which are at the heart of due process civil rights actions, such as this action brought under Sec. 1983.
 
 A.
 
 110
 City of Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) cannot be deemed to support the complaint here, or for that matter even a proposed complaint setting forth allegations which Colburn now claims represent her charges against the defendants. In Tuttle, a police officer shot and killed Tuttle at the scene of a robbery. Tuttle's administratrix brought a Sec. 1983 action against the police officer and Oklahoma City. Although the jury returned a verdict in favor of a police officer it held the City liable. The City appealed. The Court of Appeals held that proof of a single incident of unconstitutional activity by a police officer, sufficed to establish municipal liability. The Supreme Court reversed in an opinion in which now Chief Justice Rehnquist announced the judgment of the Court, stating, among other things, that the policy requirement of Monell v. New York City Dept. of Social Services,[17]
 
 
 111
 ... should make clear that, at the least, that requirement was intended to prevent the imposition of municipal liability under circumstances where no wrong could be ascribed to municipal decision makers.
 
 
 112
 * * *
 
 
 113
 * * *
 
 
 114
 At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged.
 
 
 115
 * * *
 
 
 116
 * * *
 
 
 117
 Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policy maker.... But where the policy relied upon is not itself unconstitutional, considerably more proof than a single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.
 
 
 118
 Tuttle, 471 U.S. at 821, 823-24, 105 S.Ct. at 2436-37. (Footnotes omitted)
 
 
 119
 Thus Tuttle requires that if a custom or policy is adopted by the police department or the municipality it may only be actionable if the policy maker chooses such a policy or program or adopts such a custom in a deliberate manner, designed to result in the unconstitutional act itself, in this case, Stierheim's suicide. As the Court in Tuttle skeptically observed:
 
 
 120
 [E]ven assuming that such a "policy" would suffice, it is open to question whether a policymaker's "gross negligence" in establishing police training practices [here, supervision and monitoring] could establish a "policy" that constitutes a "moving force" behind subsequent unconstitutional conduct, or whether a more conscious decision on the part of the policy maker would be required.
 
 
 121
 471 U.S. at 824 n. 7, 105 S.Ct. at 2436 n. 7.
 
 B.
 
 122
 It must be apparent from my discussion, that I would not have voted with the majority in Partridge, even though the allegations in Partridge are far nearer the mark in terms of intent and deliberateness than are the allegations found in the Colburn complaint. I would not have joined in the Partridge majority for much the same reasons as expressed by Judge Jolly in his Partridge dissent. 791 F.2d at 1190. I, too, cannot be convinced that when it is the deceased herself who has taken her own life, that any policy, custom, lack of supervision or lack of monitoring can provide the affirmative "moving force" which would constitute a constitutional violation. As Judge Jolly stated in Partridge "... it is contrary to common sense to believe that the [Town of Upper Darby and Upper Darby Police Department] would deliberately have adopted a policy of inadequate supervision that would lead to a strong likelihood of a detainee's suicide." Id. at 1191 (my emphasis).
 
 
 123
 In sum therefore, I can discern no basis for the assertion of a Sec. 1983 due process claim against the defendants joined here, where a suicide without intentional police involvement has occurred.
 
 V.
 
 124
 I have dissented in this case because I am convinced that the majority has departed from this court's precedents insofar as the majority approves the pleading of a civil rights complaint without the required specificity.
 
 
 125
 Of far greater importance however, is the failure of the majority to unequivocally set forth a meaningful standard, and more particularly a "tantamount to intent" standard, for a Sec. 1983 due process action. Moreover, the majority has failed to acknowledge Supreme Court instruction with respect to the liability of the municipal defendants and the Upper Darby Police.
 
 
 126
 I therefore dissent and because of the institutional and jurisprudential concerns which I have identified, I urge full court rehearing.[18]
 
 SUR PETITION FOR REHEARING
 
 127
 Before GIBBONS, Chief Judge, SEITZ, WEIS, HIGGINBOTHAM, SLOVITER, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, and GARTH, Circuit Judges.
 
 
 128
 SLOVITER, Circuit Judge.
 
 
 129
 The petition for rehearing filed by Appellees, Upper Darby Township, Upper Darby Township Police Department, Diane Miller, individually and as Police Officer-Matron of Upper Darby Township, Martin Kerns, individually and as Police Commissioner of Upper Darby Township, and James J. Ward, individually and as Mayor of Upper Darby Township, in the above-entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.
 
 
 130
 WEIS, HUTCHINSON, SCIRICA, and COWEN, Circuit Judges, would have granted rehearing.
 
 
 131
 GARTH, Circuit Judge, would grant the petition for panel rehearing for the reasons set forth in his following statement.
 
 GARTH, Circuit Judge, dissenting:
 
 132
 As a Senior Circuit judge, I am permitted to vote only for panel rehearing and not for rehearing in banc. While it would appear that such a vote would be fruitless in light of the majority opinion, I nevertheless record my vote for panel rehearing because of the importance of this case.
 
 
 133
 In my panel dissent, I point out the need for giving content to a standard for a due process based Sec. 1983 cause of action. Such a standard is essential for the bar, the district court, and for future decisions of this court. Although I disagreed with the majority with respect to other aspects of the majority's opinion, i.e. failure to plead with the requisite specificity, recognition of a constitutional violation when the damage complained of was caused by the plaintiffs own hand, and failure to conform to Supreme Court precedent for municipal liability, there is very little question in my mind that the overriding issue for determination should be a meaningful and well defined standard Sec. 1983 standard.
 
 
 134
 The panel majority, by failing to specify such a standard, has in my opinion abdicated an essential function of an appellate court. It was for that reason that I urged rehearing in banc when I concluded my panel dissent. This court, by now denying rehearing, has endorsed the panel's failure to provide necessary instruction in this critical area.
 
 
 135
 Were I permitted to vote for rehearing in banc, I would do so. As a senior circuit judge, however, I am remitted to voting only for panel rehearing. I so vote.
 
 
 
 [1]
 The complaint also alleges a state law claim for wrongful death and a state law survival action. The dismissal of the complaint as a whole in federal court was without prejudice to plaintiff's state law claims. Only the dismissal of the section 1983 claim is before us on appeal
 
 
 [2]
 The court explained that the stipulation "crossed paths with the motion." App. at 109
 
 
 [3]
 Two judges of the six judges who joined the in banc opinion in Davidson did not join the reference to "gross negligence". See 752 F.2d at 828 n. 8. However, two of the dissenting judges, Judge Gibbons, now Chief Judge, and Judge Higginbotham, would have held that negligence alone stated a claim under section 1983. It thus follows that six of the nine judges who considered that case in banc subscribed to the "gross negligence" standard. It is unreasonable to suggest, as the dissent does, that we cannot infer the adherence of Chief Judge Gibbons and Judge Higginbotham to the in banc court's majority view expressed in Davidson that conduct that is grossly negligent or recklessly indifferent is covered by section 1983 just because the dissenters' position that would have gone farther was rejected by the Supreme Court. See Dissenting op. at 679 n. 7
 
 
 [4]
 One approach has been suggested in Doe v. New York City Department of Social Services, 649 F.2d 134, 143 (2d Cir.1981), where the court said:
 On repeated occasions this court has drawn attention to the close affinity of the concepts, gross negligence and deliberate indifference.... One is a type of conduct, and the other a state of mind. Nevertheless, the two are closely associated, such that gross negligent conduct creates a strong presumption of deliberate indifference.
 Id. at 143 (citations and footnote omitted). We take no position on this approach at this time.
 
 
 [5]
 In considering the sufficiency of the allegations, we do not consider hypothetical possibilities alluded to by plaintiff's counsel that Stierheim may have been shot by another inmate or a guard, or his statement that a subsequent investigation suggested that she had been beaten. Counsel concedes that until given discovery into the circumstances of Stierheim's death, he is unable to make any such allegation in an amended complaint
 
 
 [6]
 Judge Becker agrees, given the applicable pleading standard, see part III, supra, that the panel's decision does not turn on whether Colburn can survive a motion for summary judgment or a directed verdict. Judge Becker notes in his view that, unless gross negligence means something less than "deliberate indifference" or "reckless disregard," a question left open in Davidson v. O'Lone, 752 F.2d 817, 828 (3d Cir.1984), Colburn cannot survive a motion for summary judgment or directed verdict without developing, by way of discovery (or proof at trial), facts beyond those set forth in her proposed amended complaint, see pp. 670-71, supra
 
 
 [7]
 We treat Upper Darby Township and named defendant Upper Darby Police Department as one entity. Appellees contend the Police Department is not a "person" subject to liability under section 1983. If plaintiff persists in her suit against that entity, the district court will have to consider whether the Upper Darby Police Department is an appropriate defendant
 
 
 [8]
 The allegation of the two prior suicides does not satisfy the requirement that there have been "a prior pattern of similar incidents" in the absence of any allegation that these suicides were tied to inadequate searches
 
 
 [9]
 For example, compare the majority's statement: "A detainee is entitled under the Due Process Clause of the Fourteenth Amendment to, at a minimum, no less protection for personal security than that afforded convicted prisoners under the Fourteenth Amendment and no less a level of medical care than that required for convicted prisoners by the Eighth Amendment," Majority op. at 668 (emphasis added), with the dissent's alteration, i.e., "the majority understandably equates the protections afforded prisoners under the Eighth Amendment with the protections afforded detainees under the Due Process Clause of the Fourteenth Amendment." Dissent op. at 676-77 (emphasis added)
 Also, there is absolutely nothing in this court's in banc opinion in Davidson v. O'Lone, 752 F.2d 817, to support the dissent's statement that that decision "recognized the requirement that some level of intent be pleaded and proved in a Sec. 1983 due process claim." Dissent op. at 676 n. 3. The statement is particularly questionable given the authorship of the majority's opinion there and here.
 
 
 [10]
 Again, compare the majority's opinion, Majority op. at 670-71, with the dissent's mischaracterization of it at Dissent op. at 683-85
 
 
 [11]
 We note the inconsistency in Judge Garth's opinion stating, on the one hand, that the Supreme Court has held intent is a required element of a due process claim, see, e.g., Dissent op. at 676 n. 2, and, on the other hand, that we should step in because the Supreme Court has given no "definitive guidance", id. at 677
 
 
 [1]
 By actions or inactions tantamount to intent, I mean those actions in which the consequences complained of are substantially certain to result, as set forth above in the quoted language from the Restatement
 
 
 [2]
 To the extent that the case of Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) has been read as approving a mere negligence standard for a Sec. 1983 claim which alleged violations of a constitutional due process right, it was overruled by Daniels. In Parratt, the Supreme Court held that Sec. 1983 does not contain an independent state of mind requirement. In his concurring opinion in Parratt, Justice Powell, while agreeing with the Court that Sec. 1983 had no state of mind requirement, argued that the intent issue was still germane in a Sec. 1983 action in determining the elements for a cause of action for a violation of the Due Process Clause. Parratt, 451 U.S. at 547, 101 S.Ct. at 1919. Justice Powell explained that
 The intent question cannot be given "a uniform answer across the entire spectrum of conceivable constitutional violations which might be the subject of a Sec. 1983 action." Baker v. McCollan, 443 U.S. 137, 139-140 [99 S.Ct. 2689, 2692-93, 61 L.Ed.2d 433] (1979). Rather, we must give close attention to the nature of the particular constitutional violation asserted, in determining whether intent is a necessary element of such a violation.
 Id. at 547-548, 101 S.Ct. at 1919.
 The Supreme Court has adopted Justice Powell's position. The Court has held that some conduct, which I read as at least conduct tantamount to intent, is one of the requisite elements of a viable cause of action alleging a violation of the Due Process Clause. Daniels v. Williams, 474 U.S. 327, 331-332, 106 S.Ct. 662, 665-66, 88 L.Ed.2d 662 (1986); Davidson v. Cannon, 474 U.S. 344, 347-348, 106 S.Ct. 668, 670-71, 88 L.Ed.2d 677 (1986).
 In his concurring opinion in Daniels and Davidson, Justice Stevens sets forth three different types of due process violations. Daniels, 474 U.S. at 337, 106 S.Ct. at 677. The three types of due process he perceives are: 1. the due process that incorporates specific protections defined in the Bill of Rights; 2. substantive due process; and 3. procedural due process.
 In this case, Colburn cannot allege a violation of a specific provision of the Bill of Rights, and issues concerning adequate notice and proper hearings are patently ludicrous in this case where Stierheim has taken her own life. Clearly Colburn is alleging a violation of substantive due process and it is precisely this type of due process violation which requires some modicum of intent or conduct tantamount to intent, as I have explained in text, supra, in order to state a viable cause of action.
 
 
 [3]
 This court's in banc decision in Davidson, 752 F.2d 817 (3d Cir.1984) (in banc), which was affirmed by the Supreme Court, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), recognized the requirement that some level of intent be pleaded and proved in a Sec. 1983 due process claim or, in other words, that mere negligence is not enough. Indeed, had it held otherwise, I would not have joined the in banc opinion. The reference in our Davidson opinion to gross negligence or recklessness, 752 F.2d at 828, is obviously dicta because Davidson involved no more than mere negligence. See note 4 infra
 
 
 [4]
 The district court's charge requiring intentional conduct, which was affirmed in Campbell, reads as follows:
 In order for plaintiff to prevail it must be shown that defendants actually intended to deprive him of reasonable protection, or that defendants acted with deliberate indifference to plaintiff's legitimate need for protection. When I use the phrase "deliberate indifference" I mean conduct which intentionally or deliberately or recklessly ignores any person's constitutional rights. Deliberate indifference is established only if there is actual knowledge of impending harm rather than a mere suspicion that plaintiffs would be assaulted and [if] the defendants consciously and culpably refused to take steps to prevent this assault.
 Mere negligence or inadvertence does not constitute deliberate indifference. (Emphasis added)
 Campbell v. Greer, 831 F.2d 700, 702 (7th Cir.1987).
 
 
 [5]
 The Partridge allegations, if fleshed out with specific facts as required by our civil rights pleading jurisprudence, see text Part II., infra, might well be deemed sufficient for a Sec. 1983 due process cause of action because they allege intentional actions by the defendants. Significantly, the court in Partridge was divided, with the majority of the Partridge court holding that the Daniels requirement was met while Judge Jolly in dissent found that even these allegations were deficient. See Partridge, 791 F.2d at 1190 (J. Jolly, dissenting) ("Hard as I may try, the words of the complaint do not lead me to the same conclusions as they do the majority.")
 
 
 [6]
 I recognize that in some contexts, no identification of particular defendants is required. District Council 47, American Federation of State, County and Municipal Employees v. Bradley, 795 F.2d 310, 314 (3d Cir.1986). Where, however, the charges made here by a plaintiff, are in terms of a police officer's familiarity with the victim's relationship with a motorcycle gang, or with police officers' knowledge that the victim (Stierheim) was "extremely depressed for personal reasons," or had previously jumped from a window; etc. (see Colburn's proposed amendments, Brief of Appellant at 5-6, maj. op. at 670-71,) the need for particularized identification becomes essential
 
 
 [7]
 In Davidson v. O'Lone, 752 F.2d 817, 828 (3d Cir.1984) (in banc), aff'd sub nom. Davidson v. Cannon, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) a case involving mere negligence (a failure of a prison official to read an inmate's note of warning) the majority opinion included the sentence "Liability under Sec. 1983 may be imposed on prison officials ... if there was intentional conduct, deliberate or reckless indifference to the prisoner's safety, or callous disregard on the part of prison officials." As earlier noted, (n. 3, supra), references to "recklessness" or "gross negligence" constituted dicta because neither had been involved in Davidson
 Of the nine judges who sat on the in banc court, only four accepted the proposition that undefined gross negligence was actionable under Sec. 1983. See 752 F.2d at 828 n. 8. The majority's contention here, Maj. Op. at 668 n. 3 that tacit agreement to liability for gross negligence can be assumed from the dissenters in Davidson who favored liability for mere negligence, ignores the fact that the Supreme Court, in affirming Davidson, specifically rejected the in banc dissenters' position. Moreover, the dissenting positions had been originally adopted because of the Supreme Court language which appears in Parratt and which has now been overruled by Daniels. Daniels, 474 U.S. at 330-31, 106 S.Ct. at 664-65.
 It is true that in Estate of Bailey by Oare v. County of York, 768 F.2d 503, 508 (3d Cir.1985), this court, again speaking through Judge Sloviter, employed the terms "deliberate indifference", "reckless disregard" and "gross negligence" in discussing the standard for a Sec. 1983 due process claim. However, in that case, as in both Davidson and the majority opinion here, no definition was, or is, given as to what those "buzzwords" mean and no content can be attributed to them from the discussion in either opinion.
 Thus, as of this date, this court has yet to explicitly define the standard for a due process based Sec. 1983 action.
 
 
 [8]
 District Council 47, American Federation of State, County and Municipal Employees v. Bradley, 795 F.2d 310 (3d Cir.1986) does not hold to the contrary. District Council 47 does no more than reiterate the specificity standard set forth in Rotolo, recognizing again that the sufficiency of a civil rights complaint must be determined on a case by case basis. In District Council 47 the complainant identified the specific constitutional right violated and the specific directors of the court responsible for violating that right. There was no uncertainty in District Council 47, as to who did what to whom, when and how, as there is in this case. Hence District Council 47 does not stand for a lessening of the pleading requirements in this Circuit but rather reinforces Rotolo's requirements of specificity. Nor does the discussion concerning amending the complaint, in District Council 47, aid the plaintiff here. Even if we were to accept every proposed allegation which appears in plaintiff's memorandum filed in the district court, and the plaintiff's brief filed on appeal, the complaint still is insufficient to satisfy the requirements of Sec. 1983 action
 
 
 [9]
 Judge Sloviter's conclusion that Colburn's claim is not frivolous because it provides ample notice to the defendants so that they may frame an answer to the complaint when amended, Maj. op. at 673-74, has unfortunately confused two issues
 Sufficient notice to frame an answer to the complaint is required only when the factual specificity of a civil rights complaint is in question. Frazier v. Southeastern Pennsylvania Transportation Authority, 785 F.2d 65, 67 (3d Cir.1986). That standard is irrelevant when the issue presented is whether a complaint is legally sufficient. To resolve this latter issue, the analysis requires that all elements which constitute such a claim be alleged.
 As I have demonstrated in this dissent, the Colburn complaint, even if and when amended, does not meet either standard. Compare Part I of this dissent, supra, (legal sufficiency of complaint) with Part II, supra (factual specificity of complaint).
 
 
 [10]
 Defendants have not yet responded to plaintiff's interrogatories and her requests for production of documents
 Maj. op at 677.
 Plaintiff is therefore entitled to a reasonable amount of discovery to help her make the necessary showing to prove her case.
 Maj. op. at 670.
 After discovery the facts might show neither gross negligence nor reckless disregard of Stierheim's rights or both.
 Maj. op. at 675.
 See also Maj. op. at 671 n. 6 ("Colburn cannot survive a motion for summary judgment or directed verdict without developing, by way of discovery (or proof at trial), facts beyond those set forth in her proposed amended complaint ...").
 
 
 [11]
 Section 1983 was enacted by Congress as a remedy for acts of intentional violence committed by the Ku Klux Klan, where a state was unable or unwilling to enforce the law. Monroe v. Pape, 365 U.S. 167, 174-76, 81 S.Ct. 473, 477-78, 5 L.Ed.2d 492 (1960). Thus, from its very inception, the element of some degree of intent has been required to state a Sec. 1983 due process claim, and it is that element which distinguishes a Sec. 1983 (constitutional) tort from all others
 
 
 [12]
 The majority has mischaracterized my position, when it states:
 [I]n Judge Garth's view, prison officials may sit idly by watching as a vulnerable inmate takes her own life as long as they neither supply the gun nor egg her on.
 Maj. op. at 674.
 As the members of the majority must know, the entire thesis of this dissent is based upon the distinction between constitutional violations and other tortious conduct. Obviously, a prison official who sits idly by while an inmate attempts suicide, as the majority hypothesizes, would not be free from liability and would unquestionably be required to respond in damages, albeit not for a constitutional violation, but for a violation of state law.
 As Justice Douglas wrote for the plurality in Screws v. United States, 325 U.S. 91, 108, 65 S.Ct. 1031, 1039, 89 L.Ed. 1495 (1945), "violation of local law does not necessarily mean that federal rights have been invaded." Indeed, Judge Sloviter herself quoted from Justice Douglas' opinion in Screws when she wrote in Davidson:
 ... Congress should not be understood to have attempted "to make all torts of state officials federal crimes. It brought within [the criminal provision] only specified acts done 'under color' of law and then only those acts which deprived a person of some rights secured by the Constitution or laws of the United States." 325 U.S. at 109, 65 S.Ct. at 1039, also quoted in Paul v. Davis, 424 U.S. at 700, 96 S.Ct. at 1160.
 752 F.2d at 824 (quoting Screws, 325 U.S. at 109, 65 S.Ct. at 1039).
 
 
 [13]
 Inasmuch as I understand Judge Becker's position to be that the term "gross negligence" is equated with a "tantamount to intent" standard, I have serious question whether the opinion, which purports to be the majority opinion, does in fact speak for the majority of the court
 
 
 [14]
 Does the majority expect judicial notice to be taken that swallowing three valium pills will result in death? Indeed, the inference is greater that if the pills remained in her possession and had been ingested, Stierheim might not have taken her own life that night
 
 
 [15]
 The majority also ignores the fact that the decedent was dressed in a halter top and denim shorts. Apparently the gun which she used to kill herself was concealed in a body cavity. Given the constitutionally suspect nature of body cavity searches, it is ludicrous to hold that the failure to perform this most intrusive action creates liability for damages. See Note, Do Prison Inmates Retain any Fourth Amendment Protection From Body Cavity Searches?, 56 U.Cin.L.Rev. 739 (1987) ("It is precisely this instinctive feeling that body cavity searches grossly intrude upon the very core of an individual's privacy that should cause courts to give serious consideration to the legitimacy of the practice.")
 
 
 [16]
 See City of Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)
 
 
 [17]
 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Monell court held that only deprivations suffered pursuant to municipal "custom" or "policy" could lead to municipal liability; thus providing a fault based analysis for imposing municipal liability
 
 
 [18]
 The importance in defining a meaningful standard for Sec. 1983 claims cannot be overemphasized in light of the tremendous numbers of civil rights cases that are brought in federal courts today. Whereas in 1960, only 280 suits were filed in federal court under all the civil rights acts, Levitt, Preemption of Section 1983 by Title VII: An Unwarranted Deprivation of Remedies, 15 Hofstra L.Rev. 265, 267 n. 13. (1987), by 1986 that number has grown to 40,970 or roughly one out of every six civil cases. Annual Report of the Director of the Administrative Office of the United States Courts, (1986). At the very least, the litigants who file, and the district court judges who must decide, these cases should be furnished with a reliable standard which affords uniformity and certainty in its application
 Judge Sloviter's suggestion, Maj. op. at 674, that because the Supreme Court has yet to explicitly define a standard for a due process based Sec. 1983 claim, that we should also forebear from doing so, is surprising. On her theory, no new legal or constitutional development could ever appear in other than a Supreme Court opinion, thereby rendering all inferior courts incapable of discharging their functions.