**DeWitt LOWE, Plaintiff,**

v.

**BOARD OF COMMISSIONERS, COUNTY OF DAUPHIN, et al., Defendants.**

**Civ. A. No. 3:CV–90–1170.**

United States District Court, M.D. Pennsylvania.

Nov. 13, 1990.

Steven Kapustin, Phyllis J. McHale, Diane Cherry, Boroff, Harris & Heller, P.C., Plymouth Meeting, Pa., for plaintiff.

Andrew Hilton Dowling, Mette, Evans & Woodside, Jay R. Braderman, Timothy Andrew Hoy, Frank J. Lavery, Jr., Marshall, Dennehey, Warner, Coleman and Goggin, Harrisburg, Pa., for defendants.

## MEMORANDUM

CALDWELL, District Judge.

I. Introduction.

Currently before the court are two motions pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss this civil rights action initiated by plaintiff, DeWitt A. Lowe. One motion has been filed by the "county defendants": Dauphin County, Gerald Frey, the Warden of the Dauphin County Prison, the Dauphin County Board of Probation and Parole, Miles Miller, a probation officer, two John Doe prison guards and one Jane Doe probation supervisor.[1] The other motion has been filed by the "city defendants": the City of Harrisburg, the Harrisburg Police Department, Alexander Whitlock, Harrisburg Chief of Police, John Hefeirfinger and John Doe, City police officers.

In considering the motions we must accept as true all the well pleaded allegations of the complaint and construe them favorably to the plaintiff. Additionally, we cannot grant the motions unless the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Labov v. Lalley*, 809 F.2d 220 (3d Cir.1987). We must also take into account the special pleading requirements for a civil rights action. *See Colburn v. Upper Darby Township*, 838 F.2d 663 (3d Cir.1988).

II. Discussion.

A. *Claims Arising From Plaintiff's Incarceration.*

The complaint is based upon two separate factual settings. Count I arises from plaintiff's thirteen day incarceration in the Dauphin County Prison on a fifteen day sentence, stemming from a state court conviction for simple assault. The count involves a failure to adequately treat two medical conditions, gout and pneumonia, which allegedly caused plaintiff's business to suffer after his release from prison. Plaintiff avers other damages as well.

According to the complaint, when Lowe arrived to begin his sentence on or about January 15, 1990, he was taking daily medication prescribed to control his gout. Plaintiff alleges that a guard in the intake unit took this medication from him with the

---

1. The caption of the complaint, without setting forth their names, refers to the Commissioners of Dauphin County as defendants but the body of the complaint identifies only the County as a defendant. We consider plaintiff as only having intended to sue the County.

explanation that "any medical problems or medications had to be discussed with medical personnel as no personal medications were allowed inside the prison." (complaint, ¶ 32). During his first two days in the prison, plaintiff notified every nurse on each sick call shift that he needed his medication and supplied them with the name and address of his personal physician. The nurses told him that attempts to contact his doctor or the doctor's hospital were unsuccessful and that medication was thus not available. (¶¶ 37 and 38). The plaintiff's gout began to flare up and became progressively more painful. (¶ 40). Plaintiff did not receive medication until on or about his eighth day of incarceration when his physician was finally contacted. (¶ 46).

Plaintiff also alleges that he contracted pneumonia while in prison. Because of prison overcrowding, his first two days were spent in the day room of cell block L, sleeping on a two inch mattress on what plaintiff describes as the cold and drafty concrete floor. (¶¶ 35 and 57). On the third day he was moved to an isolation cell where his mattress was still on the floor although he now had a steel frame to place it on. (¶ 41). On the fifth day he was moved into a room on a cell block but was still required to keep his mattress on the floor because of the crowded conditions of the jail. (¶ 44). Plaintiff then started to experience "chills and fever." (¶ 45). He signed up for sick call but received only Tylenol and Robitusson cough syrup. (¶ 47). At one time his temperature reached 101 degrees and although medical personnel were not normally available during nighttime hours, one night his pain was so severe a nurse was called and he was given aspirin. (¶ 49). On February 3, 1990, plaintiff was released two days early on his fifteen day sentence, suffering from respiratory problems. (¶ 51). His own physician then diagnosed pneumonia. (¶ 52). Plaintiff was never seen by a doctor during his incarceration. He was treated by nurses who gave him non-prescription medication. (¶ 50).

In count I of his complaint, Lowe claims a violation of his eighth amendment right against cruel and unusual punishment. Specifically, he asserts that the county, the Warden and John Doe prison guards exhibited deliberate indifference to his serious medical needs. All of the defendants in this count are charged generally with having failed to provide plaintiff with an adequate course of treatment for his gout and developing pneumonia, (¶¶ 64 and 65), and of not providing a physician when plaintiff requested care for his medical conditions. (¶¶ 63, 67 and 70). The defendants are sued "as agent of every other defendant acting within the course and scope of the agency with the knowledge and/or consent of the Codefendants," (¶ 56), and are charged with having "acted in concert...." (¶ 73). Two paragraphs deal with policy. Paragraph 61 alleges that the defendants "chose and pursued a policy of administration of medical care which was grossly inadequate to meet the physical needs of the Plaintiff." Paragraph 72 alleges that "[i]ndividual Defendants acted pursuant to a policy approved, encouraged and acquiesced in by Defendants County of Dauphin and Warden of the Dauphin County Prison." (brackets added).

In moving to dismiss, the county defendants first argue that the facts alleged do not show deliberate indifference to a serious medical need, as the eighth amendment requires for a claim arising from medical treatment. *See White v. Napoleon,* 897 F.2d 103 (3d Cir.1990). The nursing personnel did attempt to contact plaintiff's physician concerning gout medication and plaintiff did receive some treatment for his bronchial condition. Second, they assert that the statement of policy is too vague to impose liability on the County because it fails to allege that the policy resulted from the formal decision of supervisory officials or could fairly be inferred from their actions. Third, the allegations against Warden Frey are insufficient to show his personal involvement because, while paragraph 72 avers that the Warden approved and acquiesced in a policy permitting subordinates to act in an unconstitutional manner, it does not aver when or where the Warden may have ratified or approved such conduct.

In response, plaintiff's brief modifies the theory of recovery set forth in the complaint, at least as it pertains to his gout condition. Plaintiff asserts that the policy "which required prisoners to surrender prescription medication upon admission to prison amounted to an intentional refusal to provide medical care to the Plaintiff." (plaintiff's opposition brief at p. 9). At another portion of the brief, this policy is extended to include the failure to provide a medical examination to prisoners who have had medication confiscated. (plaintiff's opposition brief at p. 12). As defendants point out in their reply brief, none of these allegations of policy were set forth in the complaint. They further charge that the policy averments actually set forth are too vague. They also argue that, if the policy as set forth in the plaintiff's brief is the basis of the cause of action against the County, then the claim must fail because the eighth amendment would deal only with medical care provided after admission to the jail, regardless of whether medication was confiscated at the time of admission.

■ The county defendants' first argument must prevail as to the claim arising from plaintiff's pneumonia. Unlike his gout, this was not a pre-existing condition, diagnosed prior to his entry into the prison. Based upon the allegations of the complaint, it began in prison with "bronchial symptoms" and "chills and fever." These are serious conditions but ones which often accompany less severe diseases than pneumonia. Significantly, plaintiff did receive some treatment. The prison nurses gave him Tylenol, aspirin and cough syrup. There may have been medical malpractice here but we do not believe the allegations of the complaint set forth an eighth amendment claim in connection with plaintiff's pneumonia.

■ In regard to plaintiff's gout, we are not inclined to dismiss at this stage. We acknowledge defendants' argument that only the adequacy of the medical care plaintiff received after entering prison should be relevant to this claim. But we cannot say at this stage of the litigation

that an alleged policy of indiscriminately removing any kind of medication from all entering inmates may not lead to an eighth amendment claim. There may be very good reasons why such a policy should be enforced but we cannot say that plaintiff's theory, standing unrebutted, cannot survive a motion to dismiss, if properly pleaded. We turn now to defendants' argument concerning the adequacy of the averments dealing with policy.

■ The Third Circuit has consistently held that a civil rights complaint must be pled with factual specificity. This requirement is imposed for two reasons: (1) to protect public officials from frivolous claims and (2) to provide them with sufficient notice to prepare responsive pleadings. *See Colburn, supra,* 838 F.2d at 666. "There is no bright line rule. 'Inevitably, the sufficiency of a [civil rights] complaint must be determined on a case-by-case basis.' " *Freedman v. City of Allentown,* 853 F.2d 1111, 1114 (3d Cir.1988) (quoting *Frazier v. Southeastern Pennsylvania Transportation Authority,* 785 F.2d 65, 68 (3d Cir.1986)) (brackets added in *Freedman* ).

■ The averments concerning policy fail to meet this pleading standard. The complaint alleges in conclusional language that the defendants "chose and pursued a policy of administration of medical care which was grossly inadequate to meet the physical needs of the plaintiff," (¶ 61), and that the non-supervisory defendants "acted pursuant to a policy approved, encouraged and acquiesced in by" the County and the Warden. (¶ 72). The policy is not elaborated upon and the deficiency of these allegations is obvious. Their defect is not cured by other paragraphs of the complaint which do not directly focus upon policy or are equally conclusional.

As noted, the plaintiff has set forth in his opposition brief a specific statement of the policy he is trying to attack but any defect in the complaint cannot be cured by allegations in the plaintiff's opposition brief. Moreover, while these allegations are specific enough in connection with the substance of the policy, we believe that they are still insufficient because, as argued by

defendants, they do not allege details concerning how the policy came into existence.

We find some guidance in *Freedman, supra,* on this issue. In *Freedman,* the issue was the adequacy of an averment concerning a failure to train on the part of the municipal defendant and its supervisory officials. The plaintiffs had alleged that their decedent had committed suicide while in jail because of a policy not to institute any procedure for effectively monitoring prisoners with known suicidal tendencies, to train officers to handle such inmates, or to fund such training. The Third Circuit held that the averments were insufficient because they did not further allege the basis for imposing liability in those circumstances. The complaint should also have included allegations that supervisory officials had "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and ... circumstances under which the supervisor's inactivity could be found to have communicated a message of approval to the offending subordinate." 853 F.2d at 1117 (quoting *Chinchello v. Fenton,* 805 F.2d 126, 133 (3d Cir.1986)).

Plaintiff has correctly noted that a municipality and supervisory officials can be liable for establishing an unconstitutional policy or custom. However, as further stated by the Third Circuit in *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir.1990):

"Policy is made when a 'decisionmaker posess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986)). Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law. *Andrews,* 895 F.2d at 1480; see also *Fletcher v. O'Donnell,* 867 F.2d 791,

793–94 (3d Cir.) ("Custom may be established by proof of knowledge and acquiescence."), cert. denied, —— U.S. ——, 109 S.Ct. 3244, 106 L.Ed.2d 591 (1989). In either instance, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom. *Andrews,* 895 F.2d at 1480.

In the instant case, plaintiff alleges that the defendants have chosen a policy of inadequately administering medical care to prisoners. (¶ 61). He has also alleged that "individual" defendants, which we assume is a reference to non-supervisory defendants, acted "pursuant to a policy approved, encouraged and acquiesced in" by the Warden and the County. (¶ 72).

These allegations are deficient in three respects. First, as noted, they are conclusional. Second, paragraph 61 refers simply to "the defendants" without specifying the County or the Warden, the only defendants with authority to create such a policy or custom. Third, paragraph 72 does not specify how either one of the defendants, or both, came to approve, encourage or acquiesce in a policy followed by their subordinates. *See Freedman, supra.* In sum, under the Third Circuit standard, their pleading as to policy is vague and conclusional even though the substance of the policy is specific enough.

To cure this deficiency, and certainly to meet the first goal of the pleading standard—protecting defendants from frivolous lawsuits—plaintiff must file an amended complaint setting forth the specific policy he contends the County and Warden followed and how that policy was established. If it was by formal edict, he should say so along with the approximate date of its promulgation and where it can be located. If it was done informally, for example, by acquiescence in prior incidents, he shall state specifically the prior incidents.[2] *Accord United States v. City of Philadelphia,* 482 F.Supp. 1274, 1276–77 (E.D.Pa. 1979), *aff'd* 644 F.2d 187 (3d Cir.1980). In

---

**2.** By this example, we do not mean to limit the ways in which plaintiff can validly allege the

liability of the municipalities or supervisory officials. That can be found in the case law.

any event, the amended complaint shall make clear what policy was followed by the County and the Warden, if they differed, and how each came to create the policy.[3]

In reaching the above conclusion, we reject plaintiff's argument at page 11 of his opposition brief that the complaint is specific because he alleged that everyone he came in contact with told him it was "a policy" to confiscate medication. This allegation does not appear in the complaint and in light of the above would be insufficient in any event. The allegations concerning policy must be based upon conduct of those who have the authority to create the policy. A similar analysis applies to plaintiff's contention that because the "policy" was enforced uniformly by every prison official he encountered, it had to have resulted from supervisory decisions. The facts which would give rise to supervisory or municipal liability are well established and they do not include mere uniform application of a rule by lower level employees.

We also find plaintiff's reliance upon *Colburn* for his contention that the defendant Warden can be held accountable for policies he knew or should have known about is misplaced. The passage from *Colburn* he relies upon, 838 F.2d at 670, dealt with knowledge arising from specific facts about a particular prisoner. Plaintiff here is arguing conclusionally without supporting factual averments that liability should be imposed upon the Warden simply because he "should have known" about the policy.

### B. *Claims Based Upon Retaliatory Conduct.*

Count III is based upon certain actions undertaken by the city defendants and certain county defendants, the Dauphin County Board of Probation and Parole, Miles Miller, probation officer, and Jane Doe, a probation supervisor, in apparent retaliation for plaintiff's notification to the Dau-

phin County Solicitor's Office that plaintiff was going to file a 42 U.S.C. § 1983 action.[4]

Thus, defendant Hefeirfinger, a city police officer, the subject of plaintiff's complaints to the police in the past, is alleged to have stopped plaintiff on or about April 23, 1990, handcuffed him and brought him to the police station to post a $100 bond for various offenses, including a health code violation which occurred in July of 1989. (¶ 91 and 92). On three subsequent occasions, May 3, 10 and 15, 1990, plaintiff saw the officer parked in the vicinity of plaintiff's business. (¶ 93).

On or about May 11, 1990, police officer John Doe, probation officer Miller and probation officer Jane Doe searched plaintiff's home and business. Plaintiff protested these searches and the absence of a search warrant but was told, wrongfully, that a warrant was not necessary because the searches were pursuant to the terms of plaintiff's probation. (¶¶ 94–97).

Plaintiff avers that "Defendants, at all times, have acted willfully in their choice and pursuit of a policy of administration with an intent to harass and intimidate the Plaintiff in his pursuit of his civil rights," (¶ 99), that "[i]ndividual defendants acted pursuant to a policy approved, encouraged and acquiesced by Defendants City of Harrisburg and Dauphin County Board of Probation and Parole," (¶ 101) (brackets added), that defendants were acting within the scope of their employment with the City and the County and that "their actions were tolerated, condoned and ratified by their superiors," (¶ 102), and that each defendant acted "with the knowledge and/or consent of the Codefendants." (¶ 103).

Both sets of defendants argue that count III fails to state a claim against any of them because it does not allege that the searches of plaintiff's business and home were accomplished without plaintiff's con-

---

**3.** Based upon *Bielevicz,* it may more properly be called a custom rather than a policy if it was not formally adopted by the County or Warden. *But see Colburn, supra,* 838 F.2d at 671 ("Even in the absence of formal policymaking activity, 'an official policy' may be inferred 'from infor-

mal acts or omissions of supervisory municipal officials'....").

**4.** Presumably, an action based upon plaintiff's experience at the County Prison.

sent. We reject this argument. The complaint clearly states that the searches were conducted under protest and hence without consent.

■ The county defendants argue that the count is deficient because it does not allege that they had knowledge of the notice to the county solicitor and therefore there is no basis for a retaliation claim against them. We agree that this argument requires plaintiff to amend his complaint. It is not clear what type of claim is being asserted. Plaintiff seems to be attempting to set forth a retaliation claim but at the same time arguing in his brief that it is simply a straightforward fourth amendment claim. The plaintiff should amend to clarify the exact nature of the claim against the county defendants involved in count III. If it is a retaliation claim, he should aver facts showing their knowledge of his notice to the county solicitor. Conclusory allegations about consent and conspiracy and ratification, like those already in the complaint, will not suffice.

■ The city defendants argue that plaintiff's reference to a violation of "public policy," rather than a federal right, in count III, (*see* complaint, ¶ 104), when claiming retaliation for plaintiff's attempt to seek legal redress, renders the claim defective. We disagree. It is clear that the factual averments deal with the right of access to the courts regardless of the reference to the more nebulous "public policy."

■ The city defendants next attack the sufficiency of the claim against Officer Hefeirfinger. They argue that the alleged detention for admittedly outstanding offenses is not improper. We agree with defendants' position in part. But this claim is tied into the retaliation claim. Otherwise proper conduct may become actionable if performed with the wrong motive. This claim can proceed if plaintiff amends his complaint to show Hefeirfinger's involvement with the alleged retaliatory scheme.

■ However, the allegations concerning the Officer's stationing of his vehicle on three separate days near plaintiff's business fails to state a claim and is not curable by amendment. By his conduct, the defendant did not accost or detain the plaintiff, interfere with his business or otherwise violate any of his constitutional rights.

The city defendants also argue that there are no allegations against defendant Whitlock, that suit against him in an official capacity is improper, and that the allegations against the City must fail absent more specific allegations of policy. Plaintiff responds that "implicit" in his complaint is the presumption that the police officers learned about plaintiff's intention to file suit from supervisory officials in the police department. Apparently, plaintiff believes he is entitled to make the further presumption that it was defendant Whitlock who released the information. Plaintiff also argues in conclusory fashion that defendant Whitlock by "affirmative conduct" articulated policies and condoned and ratified the unconstitutional conduct of his subordinates.

Our discussion of these pleading issues in connection with the county defendants makes it apparent that plaintiff's arguments here must fail as well. An amended complaint must be filed which provides specific allegations concerning policy, conspiracy and acquiescence.[5] Additionally, defendant Whitlock shall not be sued in an official capacity and no claim shall be set forth against the municipalities for punitive damages. *See Gregory v. Chehi*, 843 F.2d 111 (3d Cir.1988).

### C. *Pendent State Claims.*

Counts II, IV and V of the complaint set forth pendent state law claims for negligence, intentional infliction of emotional distress and negligent infliction of emotional distress, respectively. Anticipating success on their motions to dismiss the federal claims, all defendants have moved to dis-

---

**5.** The same conclusion applies to those allegation throughout the complaint concerning approval and consent of co-defendants. *See, e.g.,* ¶¶ 56 and 72. If these averments are intended to impose liability upon certain defendants, they must be supported with facts.

miss these claims because our jurisdiction would fail once the federal claims are removed from the action. Alternatively, they argue that these counts fail to state claims upon which relief can be granted or that state law immunizes certain defendants from these claims.

Since it appears that the current complaint is deficient, we will dismiss these claims for lack of jurisdiction.[6] However, in anticipation of an amended complaint, we decide the following. First, no state law claim may be asserted against municipal defendants for intentional or negligent conduct of employees. *See* 42 Pa.C.S. § 8542. Second, no state claim for negligent conduct may be asserted against municipal employees. *Id.*

We will issue an appropriate order.[7]

ORDER

AND NOW, this 13th day of November, 1990, upon consideration of the motions to dismiss filed by the county defendants and city defendants, it is ordered that:

1. The motions are granted.

2. Plaintiff may file an amended complaint by November 30, 1990, in conformity with this memorandum. If plaintiff fails to do so, this action will be dismissed.

3. The motion of the city defendants to stay discovery is dismissed as moot.

---

6. We recognize that the claims against the John Doe prison guards for failure to respond to complaints about plaintiff's pneumonia still survive. The difficulty is that so much of the original complaint does not remain. It will be simpler to require an amended, concise complaint.

7. In connection with the John Doe issue, we believe that plaintiff is entitled to discovery to determine the identities of the unknown parties so that they may be joined. Under the circumstances, it appears that the scheduling order may have to be modified to permit this. We will entertain a motion to do so if plaintiff feels it is necessary.