Willie Gene **HARRINGTON**, Plaintiff,

v.

Henry N. **GRAYSON**, Defendant.

**Civ. A. No. 90–CV–70336–DT.**

United States District Court,
E.D. Michigan, S.D.

Jan. 22, 1993.

Cindy Thomas Archer, Detroit, MI, for plaintiff.

Julia Bell, Lansing, MI, for defendant.

### ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

This case involves a complaint under 42 U.S.C. § 1983 by the Plaintiff, Willie Gene Harrington, against the warden of the Egeler (Michigan) Correctional Facility (ECF), Henry N. Grayson, whom he claims violated his civil rights. Harrington and

Grayson have filed Motions for Summary Judgment, Fed.R.Civ.P. 56, both of which are currently before this Court for a decision.[1] For the reasons that have been set forth below, this Court will grant Grayson's Motion for Summary Judgment, and at the same time, deny Harrington's request for the entry of a similar form of relief.

## I

This controversy is based on the alleged inadequate medical treatment that Harrington received when he was an inmate at the ECF. On November 27, 1989, Harrington, who had been treated by the ECF medical staff for a recurring problem with the large toe on his right foot, was refused admission to the Duane Waters Hospital (Hospital) because he was not wearing state issued shoes. Harrington's rejection was based upon an earlier directive from Grayson who required all prisoners to wear state issued shoes as a prerequisite to their entry into the Hospital.[2]

On February 7, 1990, Harrington initiated this lawsuit, seeking damages against Grayson whom he claimed had violated his rights under the First, Eighth and Fourteenth Amendments.[3] Subsequently, Harrington and Grayson filed motions in their respective efforts to obtain specific relief from this Court.[4] On October 30, 1990, Harrington amended his Complaint by deleting his First Amendment claim and relying upon his Eighth and Fourteenth Amendment charges against Grayson.

## II

In support of his Motion to Dismiss and/or for Summary Judgment, Grayson argues, in part, that the administrative rule, which he allegedly violated when issuing the "state shoes only" directive, does not create a protected liberty interest. He also says that his now-challenged instruction was, at most, a negligent act.

Next, Grayson submits that he is entitled to qualified immunity with respect to Harrington's Eighth and Fourteenth Amendment claims. It is Grayson's position that

---

**1.** On October 19, 1992, Grayson filed a Motion to Dismiss and/or Summary Judgment, alleging that (1) Harrington had failed to state a claim upon which relief could be granted, (2) qualified immunity shielded him from liability, and (3) the record does not demonstrate any deliberate indifference to a serious medical need. On November 3, 1992, Harrington filed a response and a Motion for Summary Judgment, contending that (1) he was denied medical care without due process, (2) Grayson had been deliberately indifferent to his medical condition, and (3) qualified immunity is not applicable to this controversy.

**2.** Harrington "claimed [that] he was required to wear soft shoes or tennis shoes because of a painful right toe. [Grayson's] order came following a highly publicized escape from [the Hospital] on June 22, 1989 when an inmate wearing civilian clothing was able to walk out unnoticed. [Grayson] averred ... that he issued the order as a security measure, to help staff differentiate between prisoners and staff." (Harrington's Objections To The Magistrate's [sic] Report and Recommendation at 1–2.)

**3.** Harrington contended that "his First Amendment right and right to ·equal protection had been violated as well as claiming that [Grayson] had violated the Michigan Constitution and other administrative rules." (Grayson's Objections To The Magistrate's [sic] Report And Recommendation, dated April 15, 1991, at 2 n. 1.)

Harrington maintained "that his Eighth Amendment right to medical care was violated when he was unable to attend his scheduled appointment at [the Hospital]." *Id.* at 2. He also claimed his "right to due process [under the Fourteenth Amendment] had been violated by the order, because it had come out without the notice required by [Michigan Department of Corrections] rules and policies." *Id.*

**4.** Harrington filed a Motion for a Temporary Restraining Order and the Entry of a Preliminary Injunction against Grayson whom he sought to restrain from (1) denying him adequate medical care and corrective treatment, (2) passing him over for parole, (3) transferring or harassing him, and (4) preventing the delivery of shoes that his family had obtained for him. In addition, Harrington previously filed a Motion for Summary Judgment, to which Grayson did not respond. However, Grayson filed a Motion for Summary Judgment on his own behalf, contending that he was entitled to the defense of absolute immunity under the Eleventh Amendment.

Both parties were unsuccessful. This Court denied Grayson's Motion for Summary Judgment on April 30, 1991, 764 F. Supp. 464. Harrington's Motion for a Temporary Restraining Order and Preliminary Injunction was rejected on April 30, 1991 and his Motion for Summary Judgment was denied on August 12, 1992.

a balance of interests (deference given to a state to administer its penal institutions versus an inmate's constitutional right to be free from cruel and unusual punishment) warrants a finding that his security directive relating to a prisoner's shoe wear did not violate a clearly established statutory or constitutional right about which a reasonable person should have known.

Finally, Grayson points out that Harrington's medical records reveal that his foot problem had been extensively analyzed and treated by the ECF physicians, and the foot discomfort did not amount to a serious medical need. Moreover, Grayson maintains that he did not have any knowledge of Harrington's foot problem or of his special need for softer shoes prior to the incident on November 27, 1989.

Harrington disputes these arguments and submits that (1) he suffers pain in his back and hips as the result of his foot problem which could have been avoided had adequate medical treatment been given to him in November 1989 [5], (2) Grayson's promulgation of the administrative rule, which formed the basis for the "state shoes" instruction, was authorized by the State of Michigan [6], (3) no adequate postdeprivation remedies existed, (4) the delay in his medical treatment amounted to an act of deliberate indifference, (5) Grayson continued to be deliberately indifferent to his medical needs even after being put on notice, (6) his foot injury is a serious medical condition, and (7) qualified immunity is not available to Grayson because he should have fore-

seen a possible violation of a constitution right.

## III

Rule 12(b) of the Federal Rules of Civil Procedure permits a party to raise the defense of the failure to state a claim upon which relief may be granted. Moreover, the rule provides that

[i]f, on a motion asserting the defense ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b).

Under Rule 56 of the Federal Rules of Civil Procedure [7], a summary judgment is to be entered if the moving party demonstrates that there is no genuine issue as to any material fact, and if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, the court is authorized to examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. *Boyd v. Ford Motor Company*, 948 F.2d 283 (6th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1481,

---

**5.** Harrington offers no evidence to support this argument, except to provide this Court with a June 5, 1991 neurosurgery clinical report which records his complaints pertaining to a back problem and leg pain, but nothing pertaining to a foot related injury.

**6.** This represents a change in Harrington's argument. Initially, and in support of his earlier motion, Harrington claimed that Grayson's directive had not been authorized by the State of Michigan. Harrington now acknowledges that Grayson's promulgation of the administrative rule did not violate his rights to due process. However, he contends that it was Grayson's promulgation of an overly broad and indifferent administrative rule which violated his Fourteenth Amendment rights.

Earlier, this Court had stated that "with respect to Harrington's procedural due process claim, the current record does not support a conclusion that he enjoyed a liberty interest and Grayson's actions violated that interest." (Order, August 12, 1992, at 2.)

**7.** Fed.R.Civ.P. 56 provides, in pertinent part, that:

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on filed, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

117 L.Ed.2d 624 (1992). The failure of a party to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial...." will mandate the entry of summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

**A**

Harrington submits that Grayson's action was authorized by the State of Michigan and, as a result, he was without any adequate postdeprivation remedies. *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).

In a recent Report and Recommendation, which the Court accepted in this case, Magistrate Judge Steven Pepe wrote:

In this case, as [Harrington] himself argues, defendant's acts were not authorized by the State of Michigan. As plaintiff notes, officials were required by prison regulations to follow certain procedures when promulgating new rules. Where, as in this case, state law circumscribes the authority of an official and provides little room for discretion, actions to the contrary of the law must be considered unauthorized random conduct. (citations omitted) (footnote omitted).

(Magistrate Judge's Report and Recommendation, June 30, 1992 at 5–6.)[8] Having already determined that Grayson's actions were unauthorized, this Court will not consider Harrington's new position.[9]

An unauthorized negligent or intentional deprivation of property does not rise to the level of a violation of the due process clause under the Fourteenth Amendment where the state has provided the aggrieved party with an adequate postdeprivation remedy. *Parratt v. Taylor,* 451 U.S. 527, 543–44, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981)[10]; *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203–04, 82 L.Ed.2d 393 (1984); *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) (due process clause not implicated by negligent act of official who causes unintended loss of, or injury to, life, liberty or property).[11] This rule has been extended to unauthorized deprivations of liberty as well. *Zinermon,* 494 U.S. at 113, 110 S.Ct. at 975. *Parratt, Hudson,* and *Zinermon* only apply to those situations where an official's conduct was random and unauthorized. In such instances, the "postdeprivation process is all that is due because no predeprivation safeguards would be of use in preventing the kind of deprivation alleged." *Zinermon,* 494 U.S. at 129, 110 S.Ct. at 985. Adequate postdeprivation remedies in such situations include state tort-claim procedure. *Id.*

In the present case and without providing any factual support for his position, Harrington alleges that his postdeprivation remedies were inadequate. However, the record in this cause reveals that Harrington was fully aware of the grievance process, in that he filed several grievances with the correctional institution officials subsequent to the denial of his admission to the Hospital. Specifically, Harrington

8. In the omitted footnote, Magistrate Judge Pepe noted that Admin.R. 791.2230(5) provides that "[A]ll resident rule changes shall be announced prior to their taking effect, posted on facility bulletin boards, and publicized in appropriate resident publications." (Magistrate Judge's Report and Recommendation, June 30, 1992 at 2.)

9. This argument amounts to a motion by Harrington to reconsider the order of August 12, 1992, in which this Court accepted the recommendation of Magistrate Judge Steven Pepe. However, the ruling would not be reviewable because Harrington has failed to satisfy the minimum requirements of E.D.Mich. LR 7.1(h).

10. The Sixth Circuit Court of Appeals (Sixth Circuit) has applied the rationale of *Parratt* to claims of a deprivation of a liberty interest without procedural due process. *Watts v. Burkhart,* 854 F.2d 839, 843 (6th Cir.1988) (relying on *Wilson v. Beebe,* 770 F.2d 578, 585 (6th Cir. 1985) (*en banc*); *See also Gibson v. Matthews,* 926 F.2d 532, 537 (6th Cir.1991) (relying on *Daniels, infra).*

11. *Daniels* overruled *Parratt* to the extent that *Parratt* held that a mere lack of due care by a state official may "deprive" an individual of life, liberty, or property under the Fourteenth Amendment. *Daniels,* 474 U.S. at 328, 106 S.Ct. at 663.

**1226**

filed three grievance forms, one for being denied entry to the Hospital and two for being denied the use of his personal shoes. (*See* Prisoner/Corrections Client Grievance Forms, dated November 27, 1989, February 22, 1990, and April 16, 1990.) Harrington was also given a hearing on his "state shoe" grievance on February 23, 1990. Significantly, Harrington has not alleged that the State of Michigan tort-claim procedures were non-existent or inadequate.

For these reasons, the Court believes that adequate postdeprivation remedies did exist at the time of the alleged constitutional infraction by Grayson. Therefore, this Court must conclude that Harrington has failed to state a claim that is cognizable under the Fourteenth Amendment. Fed. R.Civ.P. 12(b)(6). Hence, Grayson's motion must be granted on Harrington's due process claim.

**B**

In order to reach the question of qualified immunity, the Court must determine if the actions by Grayson relating to Harrington's denial of admission to the Hospital and his subsequent transfer to another penal institution, Adrian Temporary Facility (ATF), without seeking the permission of the medical doctors, amounted to a violation of the Eighth Amendment.

■ The Supreme Court has held that allegations of deliberate indifference to an inmate's serious medical needs are sufficient to establish a basis for a claim under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–105, 97 S.Ct. at 291 (citations omitted). However,

[i]n order to state a cognizable claim [of medical mistreatment under the Eighth

Amendment], a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment.

*Id.* at 106, 97 S.Ct. at 292. Therefore, medical malpractice is an insufficient basis upon which to establish a constitutional violation "merely because the victim is a prisoner." *Id.*

*Estelle* requires this Court to find (1) the existence of a serious medical need and (2) a deliberate indifference by Grayson to that need.[12] In evaluating the seriousness of a prisoner's medical needs, a court should consider "such factors as the severity of the medical problems, the potential for harm if medical care is denied or delayed, and whether any such harm actually resulted from the lack of medical attention." *Burns v. Head Jailor of La Salle County Jail*, 576 F.Supp. 618, 620 (N.D.Ill. 1984) (citing *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir.1974), *cert. denied*, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1975)); *See Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir.1990) (deliberate delay of hours in providing care for painful broken foot is sufficient to state constitutional claim), *cert. denied*, 496 U.S. 928, 110 S.Ct. 2624, 110 L.Ed.2d 645 (1990); *Aldridge v. Montgomery*, 753 F.2d 970, 972–973 (11th Cir. 1985) (two and half hour delay in treatment for bleeding cut under eye held actionable); *Hughes v. Noble*, 295 F.2d 495 (5th Cir. 1961) (thirteen hour delay for broken and dislocated cervical vertebrae is actionable claim).

In the present case, the severity of Harrington's medical problem is unclear. He claims that his foot problem caused him to endure great pain. While Harrington has a history of problems with his right foot, there is no indication in this record that his foot problem required emergency treatment on the day in which he sought admis-

---

**12.** In response to Harrington's prior Motion for Summary Judgment, "this court [concluded that it] cannot conclusively determine that (1) Harrington suffered from a serious medical need, and (2) Grayson's actions constituted a deliberate indifference to Harrington's medical condition." (Order, August 12, 1992 at 2.)

sion to the Hospital. There exists no evidence that his condition worsened as a result of the six week delay between the incident at the Hospital in November 1989 and the resumption of his medical treatment in January 1990. In fact, the first connection between his foot injury and back problem appears in a February 1991 report of an attending physician. (*See*, Medical Report, February 13, 1991.)

According to Grayson, Harrington consistently rejected efforts by the ECF staff to assist him in accommodating his problem. (Grayson's Brief at 14.) He maintains that Harrington "refused an injection for his toe, refused to purchase shoes from the catalog, and discarded the insert provided him which he had been instructed to bring on his return visit." *Id.*

The weight of the evidence suggests that Harrington's foot problem was not a serious medical need. However, even if this Court assumed that his foot problem was a serious medical need, as that term has been used in the abundant amount of case law relating to this subject, Grayson's act did not amount to an act of deliberate indifference.

For example, a prison guard's intentional denial or delay in the medical care of a prisoner is evidence of deliberate indifference. *Estelle*, 429 U.S. at 104, 97 S.Ct. at 291. "When prison guards ignore without explanation a prisoner's serious medical condition *that is known or obvious to them*, the trier of fact may infer deliberate indifference." *Brown*, 894 F.2d at 1538 (emphasis added).

■ In the present case, Harrington concedes that Grayson did not have specific knowledge about his foot problem when the "state shoe" instruction was promulgated. Rather, Harrington argues that "such an indiscriminate policy of denying access to the [H]ospital without first considering how it would affect the inmates [sic] medical condition was deliberate indifference on the part of [Grayson]." (Harrington's Brief at 11.)

This Court disagrees. Harrington was aware of a notice, dated November 19, 1989, which stated that all prisoners who sought admission into the Hospital "must be properly dressed in blue shirt and pants." (Prisoner Guide Book Insert.) He and his fellow inmates were on constructive notice that a designated attire, including state-issued shoes, would be required for admission to the Hospital. Hence, Grayson's act was not an indiscriminate policy which amounted to deliberate indifference. *See Lowe v. Board of Comrs.*, 750 F.Supp. 697, 700 (M.D.Pa.1990) (policy of indiscriminately confiscating medication from entering inmates without harm analysis may state Eighth Amendment claim).

■ Harrington contends that the actions of Grayson in permitting a period of six weeks to intervene between his medical treatments, coupled with his transfer to another state penal institution subsequent to the incident in November 1989, support his accusations of deliberate indifference. Despite these allegations, Harrington has not provided the Court with any factual basis upon which to support his argument. It is well established that conclusory, unsupported allegations of constitutional deprivations do not state a federal civil rights claim. *See, e.g. Ana Leon T. v. Federal Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987), *cert. denied*, 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987); *Chapman v. Detroit*, 808 F.2d 459, 465 (6th Cir.1986) (citations omitted) ("It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings."). A review of the record indicates that Harrington received ongoing treatment by prison officials for his foot problem commencing six weeks after the November 1989 incident. (*See* Medical Reports, January 5, 1990; January 19, 1990; February 7, 1990; and February 13, 1991.) Harrington has provided this Court with no evidence that the delay caused any harm or his transfer to the ATF prevented him from obtaining adequate medical treatment. Although Harrington asserts that the ATF was unable to provide the proper medical care, there is no indication that the

facility was unwilling to arrange for his treatment elsewhere. It should also be noted that Harrington received softer shoes, as well as an X-ray examination of his foot, after the transfer from the ECF.

Under the circumstances that have been presented to the Court by the respective parties, there is no evidence of a deliberate indifference to a serious medical need. Therefore, Grayson is entitled to a summary judgment on the Harrington's Eighth Amendment claim.

### C

■ Even if the challenged acts, about which Harrington complains, satisfy the standard of a deliberate indifference, Grayson would still be entitled to qualified immunity. The question of whether an official is entitled to qualified immunity is a legal issue which must be determined by the court. *See Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir.1988) (citations omitted); *Simkunas v. Tardi*, 930 F.2d 1287, 1291 (7th Cir.1991) (whether qualified immunity attaches to police officer's action is question for the judge to resolve).

In *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations omitted), the Supreme Court established an objective qualified immunity standard which states that:

> government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

The Fourth Circuit Court of Appeals recently elaborated on the last clause of this standard, holding:

> In deciding the legal question of whether a reasonable official would have known that the alleged actions violate "clearly established" law, a court must determine whether the actions would infringe "particularized" rights claimed by the plaintiff.... '[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' ... The unlawfulness of the action must be apparent when assessed from the perspective of an objectively reasonable official charged with knowledge of established law ...; the defendant's subjective motives are irrelevant to the qualified immunity inquiry....

*Lopez v. Robinson*, 914 F.2d 486, 489 (4th Cir.1990) (citations omitted); *See also Marsh v. Arn*, 937 F.2d 1056, 1067 (6th Cir.1991). "Simply put, while official action is not necessarily protected by qualified immunity unless and until the very action in question has been held unlawful..., the unlawfulness must be apparent in light of pre-existing law." *Marsh*, 937 F.2d at 1067 (citations omitted).

■ In the present case, this Court believes that a reasonable person would not understand that a security measure which followed the posting of a notice relating to dress code and required all prisoners to use state issued shoes as a prerequisite for their entry into a hospital, would violate the Eighth Amendment.

Harrington has not provided this Court with any authority which challenges the assignment of qualified immunity to Grayson. Instead, he simply and conclusively submits that Grayson knew that a denial of medical treatment to an inmate, as reflected in this record, would constitute an act in violation of the Eighth Amendment.

This contention must be rejected. First, there is no evidence that this alleged knowledge, which has been attributable to Grayson, existed at or prior to the claimed constitutional tort. Grayson's subjective intent is not relevant. *See Lopez*, 914 F.2d at 489. Moreover, the standard is that of a reasonable person.

Grayson correctly points to the following language in *Marsh:*

> [Q]ualified immunity is designed to strike an appropriate balance between the deference that should be accorded to prison officials in their administration of the prison and the constitutional right of prisoners to be free from cruel and unusual punishment. (citation omitted).

*Marsh*, 937 F.2d at 1069. While *Marsh* addressed an official's obligation to take reasonable steps to protect inmates from violence by other inmates, the reasoning may be applied by analogy. In the present

case, the blue shirt, blue pants and state-issued shoes requirement appears to be a reasonable security measure. The record does not reveal that Grayson knew or should have known that the security measure would deprive Harrington or any prisoner of treatment for a serious medical condition.

While recognizing that Harrington may have experienced some discomfort and pain from the delay in treatment, deference should be given to the prison official. Therefore, the Court concludes that Grayson is entitled to the protection of qualified immunity.

For the reasons that have been set forth in this Order, Grayson's Motion for Summary Judgment must be granted, and Harrington's request for similar relief must be denied.

## IV

28 U.S.C. § 1915(a) precludes an *in forma pauperis* appeal unless this Court certifies that it will be taken in good faith. A review of the official record in this cause indicates that Harrington's pursuit of appellate review will be undertaken in good faith.

IT IS SO ORDERED.